**Robert ECKSTEIN and Sylvia Eckstein, on behalf of themselves and all others similarly situated, Plaintiffs,**

v.

**BALCOR FILM INVESTORS, Balcor Entertainment Company, The Balcor Company, The Balcor Securities Company, Jerry M. Reinsdorf, Robert A. Judelson, James E. Finley, Gregory S. Junkin, Barry R. Jackson, Joseph A. Kruszynski, New World Entertainment, Ltd., Lawrence L. Kuppin, Robert Rehme, and Harry E. Sloan, Defendants.**

Civ. A. No. 89–C–1315.

United States District Court, E.D. Wisconsin.

June 22, 1990.

Michael S. Glassman, Kathleen L. Clemens, Brian Barry, Clemens, Glassman & Clemens, Los Angeles, Cal., Robert S. Schachter, Robin F. Zwerling, Zwerling, Schachter & Zwerling, Jules Brody, Melissa Emert, Stull, Stull & Brody, New York City, for plaintiffs.

Steven L. Bashwiner, Mary Ellen Hennessy, C. Elizabeth McCarty, Katten Muchin & Zavis, Chicago, Ill., Ross Anderson, Frisch Dudek Ltd., Milwaukee, Wis., Dennis M. Perluss, Cassandra S. Franklin, Hufstedler, Miller, Kaus & Beardsley, Los Angeles, Cal., for defendants.

John A. Lawrence, Richman, Lawrence & Mann, Beverly Hills, Cal., Robert J. Walner, Gen. Counsel, The Balcor Co., Skokie, Ill. (pro hac vice), for Kuppin, Sloan & Rehme.

## DECISION AND ORDER

REYNOLDS, Senior District Judge.

### BACKGROUND

On February 10, 1989, plaintiffs Robert and Sylvia Eckstein ("the Ecksteins") filed a complaint, on behalf of themselves and the class they seek to represent, in the Central District of California. The Ecksteins allege that the defendants (1) violated section 10(b) of the Securities Exchange Act of 1934 ("§ 10(b)") and Rule 10b–5 promulgated thereunder by the Securities and Exchange Commission ("Rule 10b–5"), (2) committed the California common-law tort of fraud and deceit, and (3) committed the California common-law tort of negligent misrepresentation (Complaint ¶¶ 63–79).

On February 14, 1989, Judge Ideman, of the Central District of California, dismissed sua sponte without prejudice the pendent state law tort claims. On May 15, 1989, the defendants moved Judge Ideman to dismiss the Ecksteins' federal securities claim pursuant to Fed.R.Civ.P. 12(b)(6) on several grounds. The defendants' primary argument was that the complaint fails to

allege reliance, which is an essential element of a Rule 10b–5 claim.

On August 23, 1989, the Judicial Panel on Multidistrict Litigation transferred, pursuant to Title 28 U.S.C. § 1407, the Ecksteins' case (*Robert Eckstein, et al. v. Balcor Film Investors, et al.*), from the Central District of California to this court for consolidated pretrial proceedings with *Ralph Majeski, et al. v. Balcor Film Investors, et al.* ("the *Majeski* action").

On February 13, 1990, this court held a hearing to consider oral argument by the parties on defendants' motion to dismiss. After considering the parties' briefs and oral arguments, this court grants the defendants' motion and the Ecksteins' complaint is dismissed. This decision, however, does not affect the *Majeski* action, and a separate written decision on defendants' motion to dismiss in the *Majeski* action (No. 88–C–1079 (E.D.Wis.)) will be issued by this court.

## FACTS

In July 1985, the Ecksteins allegedly purchased five limited partnership interests ("Partnership Interests"), at a price of $1,000 for each interest, in Balcor Film Investors ("BFI"), a limited partnership (Complaint ¶¶ 5, 32). The complaint does not indicate from whom these Partnership Interests were purchased. BFI was formed in late 1984 specifically to produce and distribute movies pursuant to an agreement with a motion picture company, New World Entertainment, Ltd. ("New World") (Complaint ¶ 6). The general partner of BFI is Balcor Entertainment Company Ltd. ("BEC"), an Illinois corporation (Complaint ¶ 7). BEC is the wholly-owned subsidiary of the Balcor Company ("Balcor") which in turn is the wholly-owned subsidiary of the American Express Company ("American Express") (Complaint ¶ 8). The Balcor Se-

curities Company ("Balcor Securities") also is a wholly-owned subsidiary of Balcor and was the alleged underwriter of the offering of the Partnership Interests (Complaint ¶ 9). The attached diagram outlines the relationship between the defendants as alleged in the complaint.

## ANALYSIS

### I. CONTROLLING LAW

The first question this court must address is which federal circuit's law should control for the purpose of deciding dispositive motions. The Ecksteins' claim, and the defendants do not dispute, that Ninth Circuit decisions should control because the United States Supreme Court has held that the law of the transferor court governs. *Van Dusen v. Barrack*, 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964). *Van Dusen*, however, concerned a question of which state law governs in a federal diversity action and is not directly applicable to the transfer of a federal question case for purposes of pretrial discovery. *See In re Korean Air Lines Disaster*, 829 F.2d 1171 (D.C.Cir.1987), *cert. granted*, 485 U.S. 986, 108 S.Ct. 1288, 99 L.Ed.2d 499 (1988), *aff'd on other grounds, Chan v. Korean Airlines, Ltd.*, 490 U.S. 122, 109 S.Ct. 1676, 104 L.Ed.2d 113 (1989).

Although the complaint, at least in theory[1], ultimately will be transferred back to the Ninth Circuit for trial, there is no compelling reason why Ninth Circuit decisions should take precedence over those in the Seventh Circuit. If a party were to appeal a pretrial decision by this court, then the appeal would be made to the Seventh Circuit Court of Appeals, not the Ninth Circuit. The Seventh Circuit has recognized this rule of law and stated:

Although the multidistrict statute does not say which court of appeals has juris-

---

1. In *Korean Air Lines*, the D.C. Circuit Court stated that:

> In practice, it has been reported, most cases transferred under § 1407 are not remanded. *See* 1986 Ann.Rep.Director Admin.Off.U.S. Courts 128 (as of June 30, 1986, 15,026 actions had been subject to § 1407 proceedings; of those, 10,903 had been terminated by the

transferee court); Steinman, *Law of the Case: A Judicial Puzzle in Consolidated and Transferred Cases and in Multidistrict Litigation*, 135 U.Pa.L.Rev. 595, 667 & n. 247, 700 & nn. 410, 411 (1987); Weigel, *The Judicial Panel on Multidistrict Litigation, Transferor Courts, and Transferee Courts*, 78 F.R.D. 575, 583 (1978). 829 F.2d at 1176 n. 9.

diction over appeals from orders by the district court to which a case is transferred, most cases hold that it is the court of appeals covering the transferee court rather than the one covering the transferor court.

*FMC Corp. v. Glouster Engineering Co.,* 830 F.2d 770, 771 (7th Cir.1987), *cert. dismissed,* 486 U.S. 1063, 108 S.Ct. 2838, 100 L.Ed.2d 937 (1988). The Seventh Circuit is the proper court for an appeal because the Ninth Circuit has no jurisdiction over the case until this court retransfers, if appropriate, the case there. Manual for Complex Litigation, Second, § 31.121; *See also FMC Corp.,* 830 F.2d at 771–72 (1987); *Allegheny Airlines, Inc. v. LeMay,* 448 F.2d 1341, 1344 (7th Cir.1971) (per curiam), *cert. denied,* 404 U.S. 1001, 92 S.Ct. 565, 30 L.Ed.2d 553 (1974); *In re Corrugated Container Antitrust Litigation,* 662 F.2d 875, 880 (D.C.Cir.1981); *Preston Corp. v. Raese,* 335 F.2d 827, 828 (4th Cir.1964); *Astarte Shipping Co. v. Allied Steel & Export Service,* 767 F.2d 86 (5th Cir.1985) (per curiam); *In re Plumbing Fixture Cases,* 298 F.Supp. 484 (J.P.M.D.L.1968).

In addition, the District of Columbia Circuit Court has considered the question of which circuit's federal common law should govern in a case transferred for consolidated pretrial proceedings and has held:

> The federal courts spread across the country owe respect to each other's efforts and should strive to avoid conflicts, but each has an obligation to engage independently in reasoned analysis. Binding precedent for all is set only by the Supreme Court, and for the district courts within a circuit, only by the court of appeals for that circuit.

*Korean Air Lines,* 829 F.2d at 1176. The D.C. Circuit Court then went on to state that:

> [W]e deal here not with an "all-purpose" transfer under 28 U.S.C. § 1404(a), but with a transfer under 28 U.S.C. § 1407 "for coordinated or consolidated pretrial proceedings." We have held, in accord with the district court, that the law of a transferor forum on a federal question ... merits close consideration, but does

not have stare decisis effect in a transferee forum situated in another circuit. *Id.* The D.C. Circuit's reasoning in *Korean Air Lines* is persuasive, and therefore this court follows its holding. Accordingly, although close consideration will be given to the law of the Ninth Circuit, only the holdings of the Supreme Court and Seventh Circuit will be binding on this court.

## II. STANDARD OF REVIEW FOR FED. R.CIV.P. 12(b)(6) MOTION

The United States Supreme Court has repeatedly held that a federal district court should only grant a motion to dismiss on the pleading if "the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1973) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957)) (footnote omitted). In addition, the Supreme Court has stated that:

> The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test. Moreover, it is well established that, in passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter of for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader.

*Scheuer,* 416 U.S. at 236, 94 S.Ct. at 1686. The plaintiff, however, is required to allege each of the essential elements of a claim in the complaint, and if any element is missing, then the complaint must be dismissed.

## III. ALLEGATION OF RELIANCE

■ The United States Supreme Court has held that there is an implied private right of action for a violation of § 10(b) and Rule 10b–5. *Basic Inc. v. Levinson,* 485 U.S. 224, 230–31, 108 S.Ct. 978, 982–83, 99 L.Ed.2d 194 (1987), *citing Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 196, 96 S.Ct. 1375, 1382, 47 L.Ed.2d 668 (1976); *Blue Chip Stamps v. Manor Drug Stores,* 421

U.S. 723, 730, 95 S.Ct. 1917, 1922, 44 L.Ed.2d 539 (1975); *See also Bastian v. Petren Resources Corp.*, 892 F.2d 680, 683 (7th Cir.1990), *cert. denied,* —— U.S. ——, 110 S.Ct. 2590, 110 L.Ed.2d 270. The elements of a Rule 10b–5 misrepresentation or omission claim are:

(1) the defendant must make a false representation or omission of a material fact;

(2) the defendant must know that it is false and intend for the plaintiff to rely on it;

(3) the plaintiff must justifiably rely on it; and

(4) the plaintiff must suffer damage as a result.

*See Shores v. Sklar,* 647 F.2d 462, 468 (5th Cir.1981), *cert. denied,* 459 U.S. 1102, 103 S.Ct. 722, 74 L.Ed.2d 949 (1983).

■ The defendants argue that the Ecksteins' complaint should be dismissed because it does not allege that the Ecksteins relied on any specific misrepresentations or omissions when they purchased their five Partnership Interests. The Supreme Court in *Basic* held that a plaintiff's reliance on an alleged misrepresentation is an essential element in a Rule 10b–5 cause of action. 485 U.S. at 243, 108 S.Ct. at 989.[2]

The pertinent paragraphs of the Ecksteins' complaint state:

> In ignorance of the adverse facts concerning New World's and BFI's businesses and financial conditions concealed by defendants, plaintiffs and the members of the Class purchased the Interests at artificially inflated prices relying upon the integrity of the securities offering process and were damaged thereby.

(Complaint ¶ 70).

> Plaintiffs and other members of the Class, at the time of said representations and omissions, were ignorant of the falsity of these statements, and believed them to be true. In reliance upon said

misrepresentations, the integrity of the market and securities offering process, and the fidelity, integrity and superior knowledge of defendants, and in ignorance of the true facts, plaintiffs and other Class members were induced to and did purchase the Interests.

(Complaint ¶ 75). Although the reference to misrepresentations and omissions in paragraph 75 is all encompassing, the complaint does not state with particularity, as required by Fed.R.Civ.P. 9(b), which documents or statements, if any, the Ecksteins relied upon in deciding to purchase the Partnership Interests. In fact, the complaint does not allege that the Ecksteins read or listened to any information put forth by the defendants.

The Ecksteins acknowledge that they have not pled reliance on specific misstatements or omissions in their arguments in opposition to defendants' motion to dismiss. The Ecksteins argue that the reliance element in their complaint is based primarily on a variation of the "fraud-on-the-market" theory known as "fraud-on-the-regulatory process":

> [C]ontrary to what defendants have claimed in their brief, plaintiffs have adequately alleged the requisite element of reliance in their Section 10(b) claim. In a case such as the present one, where an investor has not purchased on an open market, he can still base his claim on the fraud-on-the-market theory of wrongdoing in which reliance is presumed, since the investor is presumed to have relied on the regulatory process. The plaintiffs in this case have relied on the regulatory process and, by doing so, have satisfied the reliance element. . . .

(May 31, 1989 Brief in Opp. at 1–2); and

> Count I is predicated upon a fraud on the regulatory process, a species of fraud on the market which has long been

**2.** The Seventh Circuit also has held that reliance is an essential element of a Rule 10b–5 case and has stated:

> We ascribe no magic powers to the *word* "reliance." The word, indeed the concept, is just a short-hand method of invoking, in the circumstances of a Rule 10b–5 or other securi-

ties-fraud case, the requirement common to all tort cases of proving that the alleged tort actually harmed the plaintiff.

*Latigo Ventures v. Laventhol & Horwath,* 876 F.2d 1322, 1326 (7th Cir.1989) (citations omitted).

recognized in the Ninth Circuit and has continuing vitality....

....

As currently pled, the theory of defendants' liability is primarily based upon the decision in *Arthur Young & Co. v. United States District Court*, 549 F.2d 686 (9th Cir.), *cert. denied*, 434 U.S. 829 [98 S.Ct. 109, 54 L.Ed.2d 88] (1977). (Jan. 31, 1990 Surrebuttal Brief at 2–3) (footnote omitted). Essentially, the Ecksteins argue that they do not have to plead reliance on a particular document or statement which misstates or omits material information because their reliance on the integrity of the market in which the Partnership Interests were sold and the security offering and regulatory process satisfies the reliance requirement of a Rule 10b–5 claim.

#### A. Reliance on Omissions

The Supreme Court has held that both reliance on a material omission and causation in fact can be presumed in a Rule 10b–5 case which is based primarily on a claim that the defendant failed to disclose material information. *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 152–54, 92 S.Ct. 1456, 1471–72, 31 L.Ed.2d 741 (1971). The critical aspect of the *Affiliated Ute* holding is that the burden of proving whether or not the plaintiff relied on an omission in deciding to purchase a security is shifted from the plaintiff to the defendant. As the Third and Seventh Circuits have noted, the Supreme Court no doubt shifted the burden of proof because it recognized the difficulty a plaintiff would have in proving that she relied on a statement that was never made. *See Sharp v. Coopers & Lybrand*, 649 F.2d 175, 187–89 (3d Cir.1981), *cert. denied*, 455 U.S. 938, 102 S.Ct. 1427, 71 L.Ed.2d 648 (1982); *Panter v. Marshall Field & Co.*, 646 F.2d 271, 284 (7th Cir.1981), *cert. denied*, 454 U.S. 1092, 102 S.Ct. 658, 70 L.Ed.2d 631 (1981).

The Third Circuit has held that a district court should only utilize the *Affiliated Ute* presumption of reliance when it is logical to do so. *Sharp*, 649 F.2d at 188. The court in *Sharp* wrote:

A steadfast rule requiring the defendant to refute a presumption of reliance would be neither equitable nor logical. The plaintiff traditionally assumes the burden of demonstrating causation. Only in unusual circumstances is this burden shifted from the plaintiff to the defendant. The reason for shifting the burden on the reliance issue has been an assumption that the plaintiff is generally incapable of proving that he relied on a material omission. This incapacity arises from the difficulty of proving a speculative state of facts: Had the facts not been omitted, would plaintiff have acted on the information made available and thereby averted his loss? ... Therefore, we are unpersuaded that the existence of misrepresentations *and* omissions, without more, necessitates any particular treatment of the reliance issue.

*Sharp*, 649 F.2d at 188 (citations omitted). The court then went on to conclude that:

[T]he proper approach to the problem of reliance is to analyze the plaintiff's allegations, in light of the likely proof at trial, and determine the most reasonable placement of the burden of proof of reliance. Such a flexible approach avoids the potential problems of a broad judicial pronouncement of a precept governing reliance.

*Id.* (citations and footnote omitted).

Similarly, the Seventh Circuit has held that:

As the court pointed out, however, in *Lewis*, neither *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375 [90 S.Ct. 616, 24 L.Ed.2d 593] ... (1970), nor *Affiliated Ute* abolished the reliance requirement, but "[r]ather ... held that in cases in which reliance is possible, and even likely, but is unduly burdensome to prove, the resulting doubt would be resolved in favor of the class the statute was designed to protect."

The *Mills–Ute* presumption is essentially a rule of judicial economy and convenience, designed to avoid the impracticality of requiring that each plaintiff shareholder testify concerning the reliance element. However, when the logi-

cal basis on which the presumption rests is absent, it would be highly inappropriate to apply the *Mills–Ute* presumption....

*Panter,* 646 F.2d at 284 (referring to *Lewis v. McGraw,* 619 F.2d 192 (2d Cir.1980) *cert. denied,* 449 U.S. 951, 101 S.Ct. 354, 66 L.Ed.2d 214 (1980)) (citations omitted).

As the Seventh Circuit states, the logical basis for presuming reliance is that it is often virtually impossible for the plaintiff to prove reliance on the omissions. This basis for applying the *Affiliated Ute* presumption, however, is lacking in the present case because the Ecksteins' complaint consists primarily of claims of material misstatements which eliminates the difficulties of proving reliance at trial (Complaint ¶¶ 41, 55–57).

The Ecksteins' complaint alleges that the BFI Prospectus misstated and omitted material facts (Complaint ¶ 41), and that the defendants:

> issued public statements and reports, including the Prospectus, and the content of the Materials, the marketing video and the slide show, which were materially false and misleading. As subsequent statements and events would reveal, these statements, reports and Materials misrepresented material facts and/or omitted to disclose material facts necessary to make the statements which were made not misleading....

(Complaint ¶ 57). The Ecksteins could prove that they relied upon the omissions merely by proving that they relied on the documents which allegedly contained the misstatements and omitted information. The Ecksteins, however, do not allege that they relied upon any of the specific statements or documents in which the omitted information should have been contained. To presume reliance on omissions which allegedly occurred in statements and documents which the Ecksteins do not claim to have listened to, read, or relied on is illogical and would eliminate the reliance requirement.

In addition, the *Affiliated Ute* holding should be limited to cases where allegations of omissions are the predominant claims, in order to reconcile it with the Supreme Court's holding in *Basic* that reliance is an essential element of a Rule 10b–5 claim. If a court were to interpret *Affiliated Ute* broadly to hold that a plaintiff does not have to plead or prove reliance in a complaint alleging both misstatements and omissions, then reliance would no longer be an essential element a Rule 10b–5 complaint and case. A plaintiff could easily avoid the requirement that she plead and prove reliance on a misstatement by artfully pleading that a misstatement involved an omission of the truth.[3]

A federal district court in the Ninth Circuit has also considered the breadth of the *Affiliated Ute* presumption of reliance and referred to a complaint that alleges both misrepresentations and omissions as a "mixed case." *Lubin Sybedon Corp.,* 688 F.Supp. 1425, 1446–47 (S.D.Cal.1988). The court of appeals in the Ninth Circuit, however, has never directly stated to what extent the presumption of reliance in *Affiliated Ute* should apply to mixed cases. *Lubin,* 688 F.Supp. at 1446. In *Lubin,* the District Court for the Southern District of California considered this question and held:

> The [federal] courts have reasoned that "[A mixed case] is not a case in which difficulties of proof and reliance require the application of the *Affiliated Ute* presumption."
>
> The court finds the preceding cases to be persuasive. And because this is a mixed case ..., the court holds that Lubin cannot invoke the *Affiliated Ute* presumption of reliance.

*Lubin,* 688 F.Supp. at 1447 (quoting *Huddleston v. Herman & MacLean,* 640 F.2d 534 (5th Cir.1981), *aff'd in part and rev'd in part on other grounds,* 459 U.S. 375, 103 S.Ct. 683, 74 L.Ed.2d 548 (1983)). Although *Lubin* is not binding in this circuit, this court gives Ninth Circuit decisions

---

**3.** This court further notes that by definition all misstatements can be categorized as omissions of truth.

close consideration and agrees, as discussed earlier, with the general proposition that mixed cases do not per se involve difficulties of proof which require the *Affiliated Ute* presumption. Thus, the Supreme Court's holding in *Affiliated Ute* and *Basic,* the Third, Seventh and Ninth Circuits' reasoning in *Sharp, Panter,* and *Lubin,* and the specific allegations contained in the Ecksteins' complaint lead to the conclusion that the *Affiliated Ute* presumption of reliance does not exempt the Ecksteins from pleading that they relied on the documents or statements containing the alleged material misstatements and omissions.

B.  The Fraud–On–The–Market Theory

Federal courts have used the fraud-on-the-market theory to permit a plaintiff's reliance on the integrity of the market to substitute for plaintiff's reliance on the defendant's misstatements or omissions. Note, *The Fraud-on-the-Market Theory,* 95 Harv.L.Rev. 1143, 1146 (1982).  The plaintiff's reliance on the integrity of the market price of a security is considered justified because the theory assumes that in an efficient and developed market the price of a security reflects most, if not all, publicly available information including the defendant's material misstatements and omissions.  Fischel, *Efficient Capital Markets, the Crash, and the Fraud on the Market Theory,* 74 Cornell L.Rev. 907, 910–12 (1989); Black, *Fraud on the Market: A Criticism of Dispensing with Reliance Requirements in Certain Open Market Transactions,* 62 N.C.L.Rev. 435, 477–38 (1984); Macey & Miller, *Good Finance, Bad Economics: An Analysis of the Fraud-on-the-Market Theory,* 42 Stan.L. Rev. 1059 (1990).  In addition, this substitution is necessary to provide the causation between the defendant's conduct and the plaintiff's injury.  *Basic,* 485 U.S. at 243, 108 S.Ct. at 989; *See also* Note, *Fraud-on-the-Market Theory After Basic Inc. v. Levinson,* 74 Cornell L.Rev. 964, 973 (1989).

In *Basic,* the Supreme Court held that the fraud-on-the-market theory can be utilized to create a rebuttable presumption that a plaintiff relied on the integrity of the market to determine the price of a security. 485 U.S. at 250, 108 S.Ct. at 993.  The Court also held that reliance on the market is justified and satisfies the reliance requirement of a Rule 10b–5 claim.  *Id.* Thus, when the fraud-on-the-market theory is applicable in a case, alleging reliance on the market satisfies the pleading requirement for reliance.

Conversely, if the fraud-on-the-market theory cannot be utilized to satisfy the reliance requirement, then the plaintiffs must plead that they relied on the specific documents or statements containing the misstatements or omitted information. The Court in *Basic,* however, did not explicitly state the type of security market for which the fraud-on-the-market theory can be utilized to create the presumption of reliance.  Thus, the Court's reasoning for holding that reliance on the market is justified is critical in determining if the fraud-on-the-market theory is applicable in the Ecksteins' case.

The Court first summarized the rational supporting the fraud-on-the-market theory:

> The fraud on the market theory is based on the hypothesis that, in an open and developed securities market, the price of a company's stock is determined by the available material information regarding the company and its business....  Misleading statements will therefore defraud purchasers of stock even if the purchasers do not directly rely on the misstatements....  The causal connection between the defendants' fraud and the plaintiffs' purchase of stock in such a case is no less significant than in a case of direct reliance on misrepresentations.

*Basic,* 485 U.S. at 241–42, 108 S.Ct. at 989, quoting *Peil v. Speiser,* 806 F.2d 1154, 1160–61 (3rd Cir.1986).  The Court then reasoned that reliance on the market price of a security is justified and can be substituted for reliance on defendant's specific material misstatements:

> Recent empirical studies have tended to confirm Congress' premise that the market price of shares traded on well-developed markets reflects all publicly avail-

able information, and, hence, any material misrepresentations.... Indeed, nearly every court that has considered the proposition has concluded that where materially misleading statements have been disseminated into an impersonal, well-developed market for securities, the reliance of individual plaintiffs on the integrity of the market price may be presumed.

485 U.S. at 246–47, 108 S.Ct. at 991.[4] Thus, the Court held that a plaintiff's reliance on an efficient and developed market to determine the price of a security is justified because the market price reflects most, if not all, publicly available information. 485 U.S. at 246–47, 108 S.Ct. at 990–91. In addition, the Court strongly implied that reliance on a market is justified only if the market is a well-developed and efficient market, because only in this type of market is it safe to assume that the market price reflects all publicly available information. *Id.*

The Seventh Circuit Court of Appeals also has considered the applicability of the fraud-on-the-market theory and has held that reliance on the market can be substituted for reliance on a specific misstatement or omission:

The fraud-on-the-market approach relieves the plaintiff of the need to show that he relied on or even read the misleading or incomplete disclosures; he receives a measure of damages based on the premise that actual versus "right" price is the appropriate comparison.

*Flamm v. Eberstadt,* 814 F.2d 1169, 1180 (7th Cir.1987), *cert. denied,* 484 U.S. 853, 108 S.Ct. 157, 98 L.Ed.2d 112 (1987). The Seventh Circuit has permitted the use of the fraud-on-the-market theory in cases where it is certain that the market price of the security reflects publicly available information, including the fraud:

[T]his court concluded in *Mills* that the market for the stock of widely traded firms efficiently impounds publicly available information about that firm. This implies adoption of the "fraud on the market" approach to liability under Rule 10b–5. If the plaintiff establishes that a lie, misleading statement, or omission has affected the price of the stock, he may recover without establishing that he knew of or relied on the delict; his recovery is the difference between the actual price and the price the market would have reached if traders had been fully informed.

*Id.* at 1179–80 (referring to *Mills v. Electric Auto–Lite Co.,* 552 F.2d 1239 (7th Cir. 1977), *cert. denied,* 434 U.S. 922, 98 S.Ct. 398, 54 L.Ed.2d 279 (1977) (citations omitted)).

The Seventh Circuit, however, also has not defined the exact type of market in which it is certain that the market price reflects publicly available information. The court's rationale for permitting the use of the fraud-on-the-market theory, however, is similar to that of the Supreme Court and it has stated:

The price of an actively traded stock reflects the value placed on it by the professional investors who follow a firm closely. It is a "valuation" that includes the information of many professionals, not just one. It is therefore an unusually reliable source of information when the *essential conditions (liquid markets, public information, and a following by professional investors) are met.*

*Metlyn Realty Corp. v. Esmark, Inc.,* 763 F.2d 826, 835 (7th Cir.1985) (emphasis added). Thus, the implication and logical ex-

---

**4.** This reasoning also was utilized thirteen years earlier by the Ninth Circuit Court of Appeals in *Blackie v. Barrack* when it held that reliance on the integrity of the market for determining the price of a security is justified and can be substituted for reliance on particular misrepresentations made by defendant. The Ninth Circuit stated:

A purchaser on the stock exchanges may be either unaware of a specific false representation, or may not directly rely on it; ... Never-

theless, he relies generally on the supposition that the market price is validly set and that no unsuspected manipulation has artificially inflated the price, and thus indirectly on the truth of the representations underlying the stock price—whether he is aware of it or not, *the price he pays reflects material misrepresentations.*

*Blackie,* 524 F.2d 891, 907 (9th Cir.1975) (emphasis added).

tension of the Seventh Circuit's reasoning is that the fraud-on-the-market theory creates the presumption of reliance only when the security is traded in an efficient market.

The defendants argue that the fraud-on-the-market presumption of reliance is unavailable to the Ecksteins because the BFI Partnership Interests were sold in a closed and undeveloped market where the price did not reflect all publicly available information. The Ecksteins, however, argue that a variation of the fraud-on-the-market theory, known as fraud-on-the-regulatory process, exists in the Ninth Circuit which also creates the presumption of reliance.

In *Arthur Young*, the Ninth Circuit held that reliance could be presumed because (1) the securities in question "were sold pursuant to registration statements and prospectuses filed with the S.E.C." and (2) "[t]he standardized statements appearing in the prospectuses were sent or shown to every investor in the Geotek partnerships." 549 F.2d 686, 695 (9th Cir.1977). The court reasoned that:

> Just as the open market purchaser relies on the integrity of the market and the price of the security traded on the open market to reflect the true value of securities in which he invests, so the purchaser of an original issue security relies, at least indirectly, on the integrity of the regulatory process and the truth of any representations made to the appropriate agencies and the investors at the time of the original issue.

*Id.* *Arthur Young*, however, was decided by the Ninth Circuit prior to the Supreme Court's decision in *Basic,* and therefore it is only persuasive to the extent that it does not conflict with the reasoning of *Basic.*

The Ecksteins argue that in *Lubin*, a Ninth Circuit district court case decided after *Basic*, the court cited *Arthur Young* with approval, and therefore *Arthur Young* is still controlling in the Ninth Circuit. 688 F.Supp. 1425. Although this court agrees that this court should consider *Lubin*, it disagrees with the proposition that *Lubin* held *Arthur Young* remains good law after *Basic.*

The district court in *Lubin* did not cite *Arthur Young* with approval. The district court first held that the fraud-on-the-market theory as put forth in *Basic* could not be used by the plaintiff to create the presumption of reliance because the securities in question were not sold or purchased on an efficient and impersonal market. *Lubin*, 688 F.Supp. at 1445.

The district court then considered plaintiff's argument that the complaint was sufficient because reliance could be presumed under the *Arthur Young* and *Shores* variations of the fraud-on-the-market theory (referring to *Shores v. Sklar*, 647 F.2d 462 (5th Cir.1981) (en banc), *cert. denied* 459 U.S. 1102, 103 S.Ct. 722, 74 L.Ed.2d 949 (1983)). The district court, however, did not hold that these variations of the theory were good law in the Ninth Circuit, but instead noted that the plaintiffs had not plead reliance "[e]ven assuming that either *Shores* or *Arthur Young* is valid law in this circuit...." *Lubin*, 688 F.Supp. at 1446.

The district court concluded that the plaintiff could not invoke the *Arthur Young* presumption of reliance because the securities in question were not registered with the Securities and Exchange Commission ("SEC") and the plaintiff did not show how he relied on the regulatory process. Thus, the court did not have to decide whether or not *Arthur Young* remains good law after *Basic.* This court, however, is forced to pass judgment on this question in deciding what weight should be given to *Arthur Young.*

After the Supreme Court's decision in *Basic*, the critical issue in *Arthur Young* is not whether the plaintiff relied on the regulatory process, but instead whether or not this reliance is justified in the context of a Rule 10b–5 claim.

The problem with the *Arthur Young* decision is that it did not indicate to what extent, if any, the offering price of the security in question reflected publicly available information. In fact, this consideration does not appear to have affected the court's decision. More importantly, however, the regulatory process referred to in

*Arthur Young* does not determine whether or not the offering price of the security represents all publicly available information regarding that security. This outcome depends on the efficiency of the market in which the security is being sold.

In addition, although general principles of fairness at first glance suggest that an investor is justified in relying on the regulatory process to ensure the legitimacy of an offering price, this view ignores the regulatory process. The SEC is *not* similar to an efficient market because the SEC does *not* read all of the publicly available information concerning the offering and then determine the legitimate price for the security. In fact, the SEC does not vouch for the value of a security [5] and its regulations require offerors of stock under a Securities Act prospectus to state specifically that:

**THESE SECURITIES HAVE NOT BEEN APPROVED OR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION NOR HAS THE COMMISSION PASSED UPON THE ACCURACY OR ADEQUACY OF THIS PROSPECTUS. ANY REPRESENTATION TO THE CONTRARY IS A CRIMINAL OFFENSE.**

17 C.F.R. § 229.501(c)(5) (1989) (bold-face emphasis required by regulation).[6] Thus, as the regulatory process does not ensure that the offering price of a security reflects most, if not all, publicly available information, an individual's reliance on this process cannot by itself satisfy the reliance requirement of a Rule 10b–5 claim.[7]

■ Applying the reasoning used by the Supreme Court in *Basic* and the Seventh Circuit in *Flamm* to the Ecksteins' complaint leads to the conclusion that neither the Ecksteins' reliance on the integrity of the market in which the BFI Partnership Interests were sold nor their reliance on the regulatory process satisfies the reliance requirement of a Rule 10b–5 claim.

First, the Ecksteins' reliance on the integrity of the market in which the Partnership Interests were sold is not justified because the market in question was neither well-developed nor efficient, and therefore one cannot assume that the price of the Partnership Interests reflected all publicly available information. The Partnership Interests were not sold on a national securities exchange, and there was no developed market in which the Partnership Interests were traded. In addition, the Ecksteins do not even allege that a market mechanism existed for pricing the Partnership Interests.

The complaint claims that the initial offering price of $1,000 per Partnership Interest was determined solely by BFI (¶¶ 31–32). In addition, the complaint states that BFI maintained the $1,000 offering price even though the offering was not fully subscribed. This factual allegation by itself indicates that the market which existed for the Partnership Interests did not affect their price (Complaint ¶ 32). Thus, the price of the Partnership Interests did not reflect publicly available information, and the Ecksteins' reliance on the integrity of the market in which they were sold was not justified.

Second, the Eckstein's reliance on the offering and regulatory process also is not justified. As noted above, the offering price of the Partnership Interests was determined solely by BFI, not the regulatory process. In addition, as discussed at length herein, the Supreme Court's reason-

5. Note, *The Fraud-on-the-Market Theory*, 95 Harv.L.Rev. 1143, 1158 (1982); Black, *Fraud On The Market: A Criticism Of Dispensing With Reliance Requirements In Certain Open Market Transactions*, 62 N.C.L.Rev. 435, 455–57 (1984).

6. This statement appeared on the first page of the Prospectus for the BFI partnership Interests.

7. This court also notes that the validity of *Arthur Young* after *Basic* is further undercut by Justice White opinion in *Basic,* with whom Jus-

tice O'Connor joined, concurring in part and dissenting in part. Justice White acknowledges that he agrees with portions of the majority's opinion and states, "Most importantly, the Court rejects the version of that [fraud-on-the-market] theory, heretofore adopted by some courts, 2...." *Basic,* 485 U.S. at 251, 108 S.Ct. at 993. In his footnote, Justice White cites *Arthur Young* as an example of a variation of the fraud-on-the-market theory that the majority opinion rejects.

ing in *Basic* does not support the argument that reliance on the regulatory process is justified and can fulfill the Rule 10b–5 reliance requirement. Thus, the Ecksteins have not adequately pled reliance in their complaint, and the defendants motion to dismiss is granted.

This court notes that the Ecksteins also have argued that their reliance on the regulatory process should be substituted for reliance on defendants' alleged misstatements under the variation of the fraud-on-the-market theory contained in the Fifth Circuit decision, *Shores v. Sklar*, 647 F.2d at 462. In *Shores*, the Fifth Circuit allowed reliance to be presumed because the plaintiff alleged (1) that without the material misstatements, the securities would not have been marketed at any price and (2) that he reasonably relied on the securities availability on the market as an indication of their apparent genuineness. *Id.* at 464 n. 2, 469–70. The Ecksteins, however, have not alleged, as required by *Shores*, that without the misstatements the BFI Partnership Interests would have been unmarketable. *Shores*, 647 F.2d at 470. In addition, the parties have indicated that the Partnership Interests are currently worth something. Thus, even if the *Shores* fraud-on-the-market analysis survived *Basic*, which is a question this court need not decide, the Ecksteins' complaint still does not sufficiently allege reliance.

IT IS THEREFORE ORDERED that defendants' motion to dismiss Robert Eckstein and Sylvia Eckstein's complaint on the ground that it fails to allege reliance is GRANTED, and the Ecksteins' complaint is DISMISSED.

APPENDIX

AMERICAN
EXPRESS COMP
"AMERICAN EXPRESS"
(Parent)

(wholly-owned
subsidiary)

BALCOR
COMPANY
"BALCOR"

(Parent)                    (Parent)

(wholly-owned
subsidiary)        (wholly-owned
                    subsidiary)        GENERAL
                                        PARTNERS

BALCOR
SECURITIES
COMPANY
"BALCOR SECURITIES"        BALCOR
                            ENTERTAINMENT
                            COMPANY, LTD.
                            "BEC"        BALCOR
                                          FILM
                                          INVESTORS
                                          "BFI"

* Promoted and Marketed
Limited Partnership
Interests in BFI        Underwriter
                        of the Public
                        offering        AGREEMENT

                                        NEW WORLD
                                        ENTERTAINMENT
                                        LTD.
                                        "NEW WORLD"

GENERAL
PUBLIC

*Individuals who
purchased Partnership Interests
were limited partners.

SOLD:
48,402 Partnership Interests
between Jan 8, 1985 and Dec. 31, 1985