Ralph MAJESKI, Joseph Yach, Janice Waisman, Larry R. Peterson, Thomas Weil, Lee Aldridge, Randy Karpinsky, Kenneth Kulas, Robb S. Elliott and Raymond Harding, Plaintiffs,

v.

BALCOR ENTERTAINMENT COMPANY, LTD., an Illinois Corporation, Shearson Lehman Hutton, Inc., f/k/a Shearson Lehman Brothers, Inc., and f/k/a Shearson Lehman/American Express, Inc., a Delaware Corporation, the Balcor Company, an Illinois Corporation, Balcor/American Express Inc., an Illinois Corporation, Balcor Securities Company, an Illinois Corporation, the American Express Company, a New York Corporation, New World Pictures, Ltd., a California Corporation, and Balcor Film Investors, an Illinois Limited Partnership, Defendants.

Robert ECKSTEIN and Sylvia Eckstein, on Behalf of Themselves and all Others Similarly Situated, Plaintiffs,

v.

BALCOR FILM INVESTORS, Balcor Entertainment Company, the Balcor Company, the Balcor Securities Company, Jerry M. Reinsdorf, Robert A. Judelson, James E. Finley, Gregory S. Junkin, Barry R. Jackson, Joseph A. Kruszynski, New World Entertainment, Ltd., Lawrence L. Kuppin, Robert Rehme, and Harry E. Sloan, Defendants.

Civ. A. Nos. 88–C–1079, 89–C–1315.

United States District Court,
E.D. Wisconsin.

Jan. 18, 1991.

Michael S. Glassman, Kathleen L. Clemens, Brian Barry, Clemens, Glassman & Clemens, Los Angeles, Cal.; Robert S. Schachter, Robin F. Zwerling, Zwerling, Schachter & Zwerling; Jules Brody, Melissa Emert, Stull, Stull & Brody, New York City; and George P. Kersten, E. Campion Kersten, and Bruce J. Landgraf, Kersten & McKinnon, Milwaukee, Wis. (Galanis & Friedland, S.C., Jerry H. Friedland, of counsel), for plaintiffs.

Steven Bashwiner, C. Elizabeth McCarty, Mary Ellen Hennessy, Katten Muchin & Zavis, Chicago, Ill., Ross A. Anderson, Frisch Dudek, Ltd., Milwaukee, Wis. and Robert J. Walner, Gen. Counsel, Balcor Co., Skokie, Ill., for defendants Balcor Entertainment Co., Ltd., The Balcor Co., Balcor/American Express Inc., Balcor Securities Co., New World Pictures, Ltd. and Balcor Film Investors.

H. Nicholas Berberian, Thomas M. Knepper, Jerry M. Santangelo, Neal Gerber Eisenberg & Lurie, Chicago, Ill., and Terry E. Mitchell, Mitchell, Baxter & Zieger, S.C., Milwaukee, Wis., for defendants Shearson Lehman Hutton Inc. and American Express Co.

John A. Lawrence, Richman, Lawrence & Mann, Beverly Hills, Cal., Robert J. Walner, pro hac vice, Gen. Counsel, Balcor Co., Skokie, Ill., for defendants Kuppin, Sloan and Rehme.

Steven L. Bashwiner, Mary Ellen Hennessy, C. Elizabeth McCarty, Katten Muchin & Zavis, Chicago, Ill., Ross Anderson, Frisch Dudek Ltd., Milwaukee, Wis., and Dennis M. Perluss and Cassandra S. Franklin, Hufstedler, Miller, Kaus & Beardsley, Los Angeles, Cal., for all other defendants.

## DECISION AND ORDER

REYNOLDS, Senior District Judge.

### BACKGROUND

On August 23, 1989, the Judicial Panel on Multidistrict Litigation ordered, pursuant to Title 28 United States Code § 1407, the case of *Robert Eckstein, et al. v. Balcor Film Investors, et al.*, (*"Eckstein"*)[1] to be transferred from the Central District of California to this court for consolidated pretrial proceedings with *Ralph Majeski, et al. v. Balcor Film Investors, et al.* (*"Majeski"*). The plaintiffs in both actions have moved this court to certify a class consisting of all persons who purchased limited partnership interests ("Interests") in defendant Balcor Film Investors ("BFI") during the period of January 8, 1985, through December 31, 1985.

On January 18, 1991, this court held a hearing to consider oral argument by the parties on the plaintiffs' class certification motions. After considering the parties' briefs and oral arguments, this court: (1) certifies a class comprised of individuals who purchased BFI Interests during the period January 8, 1985, through December 31, 1985; (2) certifies that the plaintiffs in the *Majeski* action shall represent a subclass comprised of all individuals who purchased BFI Interests in reliance on the public offering materials associated with

---

1. The plaintiffs in the *Eckstein* action are Robert and Sylvia Eckstein (hereinafter "the Ecksteins").

the Interests; (3) certifies that the plaintiffs in the *Eckstein* action shall represent a subclass comprised of all individuals who purchased BFI Interests *without* relying on the public offering materials associated with the Interests; (4) consolidates, sua sponte, the *Majeski* and *Eckstein* actions; and (5) grants the parties in the *Majeski* and *Eckstein* actions fourteen (14) days to file briefs, limited to five pages, on the appropriateness of consolidation and whether or not plaintiffs' counsel can work out among themselves a suitable arrangement as to who will be lead counsel and how the class action will be presented at trial. Finally, this court holds that the defendants' motion for discovery of the *Eckstein* plaintiffs' 1985 to 1989 tax returns is granted.

## FACTS

This court has outlined the facts of both the *Majeski* and *Eckstein* actions in its June 22, 1990 decision and orders, and therefore will not repeat them here. *See Majeski,* 740 F.Supp. 563 (E.D.Wis.1990); *Eckstein,* 740 F.Supp. 572 (E.D.Wis.1990). As a general observation, however, this court notes that the primary claim in both actions is that the defendants violated § 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5 promulgated thereunder by the Securities and Exchange Commission ("Rule 10b–5").[2] The primary factual allegation in both actions is that the written brochures, BFI prospectus ("Prospectus"), videotapes and other materials associated with the public offering of the BFI Interests (hereinafter "public offering materials") contained material misstatements and omissions. In addition, although the defendants named in the two actions are slightly different, the objective of the plaintiffs in both actions appears to have been to name all possible corporate entities and individuals who were associated with BFI and the public offering of the BFI Interests.

## ANALYSIS

## I. CLASS CERTIFICATION

■ The plaintiffs seeking certification of a class are required to satisfy the four requirements of Rule 23(a) of the Federal Rules of Civil Procedure and at least one of the requirements of Rule 23(b). The Seventh Circuit Court of Appeals has held that the decision regarding certification of a class is a matter for the trial court's discretion and has stated:

Rule 23 must be liberally interpreted. Its policy is to favor maintenance of class actions. This policy operates just as surely in cases where securities fraud is charged. It is especially strong in instances where denial of class status would effectively terminate further litigation of the securities fraud claims.

*King v. Kansas City Southern Industries, Inc.,* 519 F.2d 20, 25–26 (7th Cir.1975) (citations omitted). In addition, the Third Circuit Court of Appeals has held:

Class actions are a particularly appropriate and desirable means to resolve claims based on the securities laws, "since the effectiveness of the securities laws may depend in large measure on the application of the class action device." *Kahan v. Rosenstiel,* 424 F.2d 161, 169 (3d Cir.), *cert. denied,* 398 U.S. 950, 90 S.Ct. 1870, 26 L.Ed.2d 290 (1970). We stated further, "(T)he interests of justice require that in a doubtful case ... any error, if there is to be one, should be committed in favor of allowing a class action." *Id.* (quoting *Esplin v. Hirschi,* 402 F.2d 94, 101 (10th Cir.1968), *cert. denied,* 394 U.S. 928, 89 S.Ct. 1194, 22 L.Ed.2d 459 (1969)). As the Second Circuit has noted, "a class action [in a federal securities action] may well be the appropriate means for expeditious litigation of the issues, because a large number of individuals may have been injured, although no one person may have been damaged to a degree which would have induced him to institute litigation solely on his own behalf." *Green v. Wolf*

2. This court notes that the plaintiffs in the *Majeski* action ("*Majeski* plaintiffs") have also alleged numerous state law claims. These claims, however, are also based on the essentially identical factual allegations as the federal securities law claims.

*Corp.,* 406 F.2d 291, 296 (2d Cir.1968) *cert. denied,* 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969).

*Eisenberg v. Gagnon,* 766 F.2d 770, 785 (3rd Cir.1985) (brackets in original), *cert. denied,* 474 U.S. 946, 106 S.Ct. 342, 88 L.Ed.2d 290 (1985). The record to date in the *Majeski* and *Eckstein* actions indicates that these cases are ideally suited for resolution via class certification because the amount of damage to the named plaintiffs is not great enough to have induced them to commence this action solely on their own behalf. As an example, the Ecksteins jointly purchased five BFI Interests for $5,000 (Complaint ¶ 5), an amount of money which pales in comparison to the attorney's fees already expended in this action. However, regardless of the fact that these general considerations strongly favor class certification, the plaintiffs must still satisfy the requirements of Rule 23.

A. Four Requirements of Rule 23(a)

Rule 23(a) requires the plaintiffs to demonstrate that:

(1) the class is so numerous that joinder of all members is impracticable, (2) there are question of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

The plaintiffs have satisfied each of these four requirements for the federal claims and one of the state law claims. Thus, this court will certify a class and two subclasses.

1. Numerosity

 The defendants do not contest that the proposed class would be so numerous that joinder of all class members is impracticable (Apr. 25, 1990 Defs.Mem. in Opp. at 6). The plaintiffs allege that approximately 48,402 Interests in BFI were offered and sold, and that the class of individuals owning the Interests numbers in at least the thousands (Jan. 17, 1990 Eckstein Mem. in Support at 8). Thus, this court concludes that joinder of all class members is imprac-

ticable, and the numerosity requirement of Rule 23(a) is satisfied.

2. Commonality

 There are questions of fact and law common to the members of the proposed class. The critical facts in question concern the statements contained in the BFI Prospectus and other public offering materials. These factual questions are common to each member of the class. In addition, the primary legal issue in question is whether or not the BFI Prospectus and public offering materials contained material misstatements or omissions or both, in violation of federal securities laws, which caused harm to members of the class. Finally, the defendants do not contest that there are questions of fact and law common to members of the proposed class (Apr. 25, 1990 Defs. Mem. in Opp. at 6). Thus, this court concludes that there are questions of fact and law common to all members of the proposed class and that the commonality requirement of Rule 23(a) is satisfied.

3. Typicality

The defendants opposed the certification of a class because they argue that neither the *Eckstein* nor the *Majeski* plaintiffs' claims are typical of the claims of the class. The defendants argue that the Ecksteins' claims are atypical because: (1) the Ecksteins have raised an unique legal theory for recovery; (2) they relied on their son's expertise and advice in purchasing the BFI Interests which provides the defendants with an unique defense against them; and (3) they relied on inside information in purchasing the BFI Interests, providing the defendants with another unique defense against them. This court disagrees with each of the defendants' arguments and finds that the Ecksteins' claims are typical of an easily definable subclass of the class members.

The defendants argue that the Majeski plaintiffs' claims are atypical of the class because: (1) all of the plaintiffs, except Majeski, have entered into arbitration agreements with defendant Shearson Leh-

man Hutton, Inc. ("Shearson"), which this court has held are enforceable; (2) the plaintiffs are not entitled to the presumption of reliance; (3) the named plaintiffs relied on the advice of various individuals, unknown to other members of the class, in deciding to purchase the BFI Interests; and (4) certain of the named plaintiffs disregarded the risk disclosures contained in the Prospectus. This court disagrees with each of the defendants' arguments and finds that the *Majeski* plaintiffs' claims are typical of an easily definable subclass of the class. Finally, this court finds that when the *Majeski* and *Eckstein* actions are consolidated, the two subclasses become typical of all individual members of the class.

■ The typicality requirement is primarily designed to ensure that the representative class plaintiff(s) are motivated to pursue the best interests of the class. In essence, this requirement "overlaps the requirements that the named representatives adequately represent the class, that there be common questions of law and fact, that such questions predominate, and that the class action be a superior means of resolution." *Eisenberg,* 766 F.2d at 786, (citing H. Newberg, 1 *Newberg on Class Actions,* § 1115a (1977) and 3B *Moore's Federal Practices,* ¶ 23.06–2 (1985)). Typicality, however, does not require the named plaintiff to be in the identical situation as every member of the class. *De La Fuente v. Stokely–Van Camp, Inc.,* 713 F.2d 225, 232 (7th Cir.1983); *Adams v. Califano,* 474 F.Supp. 974 (D.Md.1979), *aff'd* 609 F.2d 505 (4th Cir.1979); *Penn v. San Juan Hospital,* 528 F.2d 1181, 1189 (10th Cir.1975). The critical issue is whether or not the plaintiffs' interests are antagonistic to the class.

(a) The Ecksteins

The defendants first argue that the Ecksteins' claim is atypical because it is based upon an unique variation of the "fraud-on-the-market" theory. The Ecksteins have claimed that they do not have the burden of proving that they individually relied on the BFI public offering materials because: (1) these materials contained material omissions; and (2) without the material omissions and misstatements the defendants would have been unable to sell any of the BFI Interests (Second Amended Complaint ¶¶ 75–79).

■ As this court noted in its November 14, 1990 decision and order, the United States Supreme Court has held that the reliance element of a Rule 10b–5 claim is necessary because it "provides the requisite causal connection between a defendant's misrepresentation [or omission] and a plaintiff's injury." *Basic, Inc. v. Levinson,* 485 U.S. 224, 243, 108 S.Ct. 978, 989, 99 L.Ed.2d 194 (1988). In the present case, if the Ecksteins are able to prove that without the alleged fraud by the defendants none of the BFI Interests would have been sold, then they will satisfy the reliance requirement of the Rule 10b–5 claim because they will have established the necessary nexus between the defendants' conduct and the Ecksteins' injury. More importantly, the Ecksteins' legal theory is applicable to each individual who purchased a BFI Interest because if the theory prevails it will permit each individual to recover without having to prove that they relied on the public offering materials when purchasing their BFI Interests.

■ The defendants also argue that the Ecksteins' claim is atypical because the defendants have an unique defense against them based on the fact that the Ecksteins relied on their son's expertise and advice in purchasing the BFI Interests. The defendants claim that the Ecksteins' reliance on their son will permit them to rebut any presumption of reliance created by the variation of the fraud-on-the-market theory the Ecksteins are proceeding under. The defendants argument, however, becomes meritless in light of this court's November 14, 1990 decision and order.[3] If the Ecksteins prove that the BFI Interests would not

---

**3.** In fairness to the defendants, this court notes that they presented this argument in their April 25, 1990 Memorandum in Opposition to Plaintiffs' Motion for Class Certification, which was prior to this court's November 14, 1990 decision and order.

have been sold but for the fraud, then the question of what or whom the Ecksteins relied on in deciding to purchase the BFI Interests becomes inapposite.

The defendants further argue that the Ecksteins' claim is atypical of the class because the Ecksteins relied on inside information in purchasing the BFI Interests. The defendants claim that this alleged fact provides them with another unique defense against the Ecksteins. This alleged unique defense, however, also is premised on an argument that the Ecksteins have to prove that they relied on the market in order to prevail on their Rule 10b–5 claim. *See Cohen v. Laiti*, 98 F.R.D. 581, 584 (E.D.N.Y.1983); *Landry v. Price Waterhouse Chartered Accountants*, 123 F.R.D. 474, 476 (S.D.N.Y.1989). As noted in the preceding paragraph, this entire question of reliance becomes inapposite if the Ecksteins prevail on their claim that none of the BFI Interests would have been sold but for the defendants alleged fraud.

Finally, this court finds that the Ecksteins' claims are not antagonistic to the class of individuals who purchased BFI Interests. Each class member would join in the claim that the BFI Interests would not have been sold but for the fraud because this theory provides each individual with the opportunity to prevail on a Rule 10b–5 claim without having to prove that they relied on anything.

■ This court, however, notes that the Ecksteins' claim is not the only claim that an individual who purchased the BFI Interests could bring. If an individual actually relied on the public offering materials, or a broker who relied on these materials, then the individual could also claim that the defendants are liable under Rule 10b–5 because the fraud caused him to purchase the BFI Interests. The failure of the Ecksteins' to raise this claim, however, is not problematic because this is the primary claim which the *Majeski* plaintiffs have alleged in their complaint. Thus, this court concludes that the Ecksteins' claims, when consolidated with the *Majeski* plaintiffs' claims, are typical of the claims of the class of individuals who purchased BFI Interests

and that the typicality requirement of Rule 23(a) is satisfied.

(b) The *Majeski* Plaintiffs

■ The defendants first argue that the *Majeski* plaintiffs' claims are atypical of the claims of the class because all of the plaintiffs, except Ralph Majeski, agreed to arbitrate any claim they have against defendant Shearson. This court finds this argument unpersuasive. The class of individuals who purchased BFI Interests no doubt contains individuals who signed arbitration agreements with defendant Shearson and individuals who did not. Pursuant to this court's June 22, 1990 decision and order, plaintiff Ralph Majeski has been permitted to proceed on his claim against defendant Shearson. Thus, the trial in this action will reach the merits on the *Majeski* plaintiffs' claims against each of the defendants, including Shearson.

The defendants also argue that the *Majeski* plaintiffs' claims are atypical because none of the plaintiffs are entitled to a presumption of reliance. Although this argument is directly applicable to the Rule 23(b)(3) requirement that common questions of law or fact must predominate, this court will address it here. The defendants essentially argue that class certification is inappropriate because the fraud-on-the-market theory is inapplicable to the plaintiffs' claims, thereby requiring each individual class member to prove that they relied on the alleged fraudulent statements. The defendants assert that because the facts surrounding the *Majeski* plaintiffs' reliance is specific to each of them, none of them are typical of the members of the class.

■ First, this court notes that carrying the defendants' argument to its logical extreme renders the applicability of the fraud-on-the-market theory a precondition of the maintenance of a Rule 10b–5 class action. Second, this court finds that the reasoning and holding of the Third and Second Circuits on this issue is persuasive. In *Eisenberg*, the Third Circuit Court of Appeals stated:

The presence of individual questions as to the reliance of each investor does not

mean that the common questions of law and fact do not predominate over questions affecting individual members as required by Rule 23(b)(3) or that the representative's claims are not typical. In rejecting such a contention, the Second Circuit stated, "Carried to its logical end [this argument] would negate any attempted class action under Rule 10b–5, since as the District Courts have recognized, reliance is an issue lurking in every 10b–5 action." *Green v. Wolf Corp.,* 406 F.2d at 301. Rather than eliminate securities class actions, it would be more efficient to order separate trials, if necessary, limited to the issue of reliance.

766 F.2d at 786 (brackets in original). In the present case, if the ultimate decision of the factfinder renders the issue of each class member's reliance pertinent, then this court will conduct separate trials solely on this issue. Although these trials may be numerous, they will be expedient because they would involve only one issue: reliance. The overwhelming majority of the dispute, i.e. whether or not a fraud occurred, would already have been decided by a single court in a single class action decision. Proceeding in this manner will greatly enhance judicial efficiency and will significantly reduce the long-term costs to all parties.

█ The defendants next argue that the *Majeski* plaintiffs' claims are atypical because the plaintiffs relied on the oral advice of various individuals, unknown to other members of the class, in deciding to purchase the BFI Interests. The defendants claim that this fact subjects the *Majeski* plaintiffs to unique defenses. Although the defendants may be correct, this court finds that the plaintiffs' reliance on oral representations made by individuals unknown to the preponderance of class members does not render them atypical, but instead typical of all class members. This court is convinced that in the real world most individuals do not make investment decisions based solely on written or videotape materials, but instead on a combination of these materials and the oral representations of their broker, other trusted advisors, or friends.

More importantly, the oral representations are only relevant to the extent that the plaintiffs are required to prove that they relied on the fraudulent misstatements or omissions when they purchased the BFI Interests. First, as noted earlier, if the Ecksteins prevail on their claim that the BFI Interests would not have been sold but for the fraud, then the issue of reliance for each class member becomes inapposite. Second, if the alleged fraud in the public offering materials consisted primarily of omissions, then there is the likelihood that the *Affiliated Ute* presumption of reliance would exist (*Affiliated Ute Citizens of Utah v. United States,* 406 U.S. 128, 153–54, 92 S.Ct. 1456, 1472, 31 L.Ed.2d 741 (1971)). Finally, if the Ecksteins' theory does not prevail and each class member is required to prove reliance, then this court already has decided to conduct subsequent trials solely on the issue of each class members' fraud. Although some additional time and effort will be required when reliance on oral statements by brokers, advisors, or friends occurred, it should not be overwhelming and certainly does not outweigh the judicial efficiency which will occur by proceeding with this case as a class action. *See Sharp v. Coopers & Lybrand,* 70 F.R.D. 544, 546–549 (E.D.Pa.1976).

█ The defendants also argue that the plaintiffs are atypical of the class because they chose to disregard the risk disclosures contained in the BFI Prospectus. This argument is unpersuasive because every class member who read the BFI Prospectus chose to ignore, to one extent or another, the risk disclosures contained therein.

Finally, this court concludes that the *Majeski* plaintiffs' claims, when combined with the Eckstein's claims, are not antagonistic to the class of individuals who purchased BFI Interests. Each individual who relied on the public offering materials would no doubt join the *Majeski* plaintiffs' claim that these materials were fraudulent and caused them harm. The *Majeski* plaintiffs' claims, however, do not adequately protect the interests of those individuals in the class who purchased the BFI Interests without relying on the materials in ques-

tion. The claims and interests of these class members are only protected by the Ecksteins' claim that, but for the fraud by defendants, the BFI Interests would not have been sold. Thus, this court concludes that when the *Eckstein* and *Majeski* plaintiffs' claims are consolidated they become typical of the claims of all class members and that the typicality requirement of Rule 23(a) is satisfied.

### 4. Adequacy of Representation

The final requirement or Rule 23(a) is that the representative parties will fairly and adequately protect the interests of the class. The Seventh Circuit Court of Appeals has held that adequate representation requires the fulfillment of a two-part test: "(a) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation, and (b) the plaintiff must not have interests antagonistic to those of the class." *Susman v. Lincoln American Corp.*, 561 F.2d 86, 90 (7th Cir.1977) (quoting *Wetzel v. Liberty Mut. Ins. Co.*, 508 F.2d 239, 247 (3rd Cir. 1975), *cert. denied*, 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975).

The defendants do not contest that the Ecksteins have met their burden of showing that their attorneys are qualified, experienced, and generally able to manage this class action. The defendants, however, allege that the *Majeski* plaintiffs have not met this burden.

Both the *Eckstein* and *Majeski* actions have already involved the filing of various pleadings, motions, and briefs along with the presentation of oral arguments. The plaintiffs' attorneys' performance in both the *Eckstein* and *Majeski* actions before this court to date leads this court to conclude that the plaintiffs' attorneys in both actions are more than competent to handle this action.

The defendants also argue that neither the *Eckstein* nor the *Majeski* plaintiffs satisfy the second part of the adequacy-of-representation test. The defendants claim that the Ecksteins are inadequate representatives because: (1) the Ecksteins have no personal knowledge of the allegations in the complaint; (2) the Ecksteins have a conflict of interest because of their son; and (3) Robert Eckstein is old and in ill health. This court finds none of these arguments persuasive.

First, as the Ecksteins have not alleged that they relied on the public offering materials in deciding to purchase the BFI Interests, their knowledge of the fraud contained in these materials is irrelevant. Second, the defendants have offered no valid reason why the Ecksteins' purchase of their BFI Interests through their son renders their interests antagonistic to the other members of the class. Finally, the defendants' argument regarding Robert Eckstein's ability to protect the interests of the class do not diminish the ability of Sylvia Eckstein to represent the class.

As noted earlier in this decision, however, this court is concerned that the Ecksteins do not have the necessary incentive to protect the interests of the members of the class who actually relied on the public offering materials. Although a victory for the Ecksteins would result in a victory for all class members, a defeat for the Ecksteins does not necessarily mean that all class members lose. Thus, this court finds that the Ecksteins are best suited to represent a subclass of the class comprised of all individuals who purchased BFI Interests *without* relying on the public offering materials.

Defendant Shearson has argued that plaintiff Ralph Majeski, the only one of the *Majeski* plaintiffs whose claims against Shearson have not been stayed pursuant to an arbitration agreement, is an inadequate class representative because: (1) he is primarily interested in high-risk investments; (2) he ignored the risk warnings contained in the Prospectus; and (3) he is not credible. This court finds Shearson's arguments unpersuasive.

First, the defendants have provided no convincing reason why the possibility that Ralph Majeski is a high risk investor renders his interests antagonistic to those of the class. Similarly, the defendants have failed to provide a valid reason why the

possibility that he ignored the alleged risk-warnings contained in the Prospectus renders his interests antagonistic to those of the class. As noted earlier, all members of the class ignored these alleged warnings to one extent or another. Finally, the evidence which the defendants have provided regarding Ralph Majeski's credibility also does not convince this court that his interests are antagonistic to those of the class.

This court, however, recognizes that the *Majeski* plaintiffs' incentive to argue that those class members who never relied on the public offering materials should prevail is not as great as the incentive of the Ecksteins. In fact, there is some question as to whether or not the *Majeski* plaintiffs have sufficiently alleged in their complaint the claim that, but for the fraud, the BFI Interests would not have been sold. Thus, this court finds that the *Majeski* plaintiffs are best suited to represent a subclass of the class comprised of all individuals who relied on the public offering materials in purchasing the BFI Interests.

B. Requirements of Rule 23(b)

Fed.R.Civ.P. 23(b) provides in pertinent part:

> *Class Actions Maintainable.* An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:
>
> \* \* \* \* \* \*
>
> (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy....

The defendants have not contested that the Ecksteins' action satisfies this requirement. Indeed, the facts underlying the Ecksteins' complaint and the legal claims contained within their complaint are common to all individuals who purchased BFI Interests.

The defendants, however, argue that the common questions of fact or law are not predominate in the *Majeski* plaintiffs' complaint because the plaintiffs have alleged state law claims. The *Majeski* plaintiffs'

complaint includes the following state law claims: (1) breach of fiduciary duties, (2) common-law-fraud, (3) negligent misrepresentation, (4) misrepresentation—strict liability, (5) breach of contract, and (6) derivative action (Amended Complaint ¶¶ 33–50). The defendants essentially argue that: (1) the state common-law claim of fraud requires each individual class member to prove reliance, and (2) that the laws of states in which individual class members reside will have to govern the numerous state law claims.

 First, as this court discussed at great length earlier in this decision, the possibility that each individual class member may have to prove reliance in subsequent trials does not render proceeding as a class action inappropriate. Second, although some of the *Majeski* plaintiffs' state law claims are inappropriate for being handled via a class action, this does not undercut the rationale for certifying the class for the plaintiffs' primary claims.

 This court is persuaded by the defendants' arguments that the following state law claims should *not* be certified for class treatment: (1) fraud; (2) negligent misrepresentation; (3) misrepresentation—strict liability; and (4) breach of contract. *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 725 (11th Cir.1987); *Bresson v. Thomson McKinnon Securities Inc.*, 118 F.R.D. 339, 343–44 (S.D.N.Y.1988). This court, however, certifies, at this time, the state law breach of fiduciary duties claim because the law of the state of incorporation normally determines issues relating to the internal affairs of a corporation. *First Nat'l City Bank v. Banco Para El Comercio Exterior De Cuba*, 462 U.S. 611, 619, 103 S.Ct. 2591, 2596, 77 L.Ed.2d 46 (1983). Finally, neither party has argued whether or not the derivative action state law claim is appropriate for class treatment. As the burden is on the plaintiffs to prove that the elements of Rule 23 have been satisfied, this court does not certify this claim.

As noted earlier, however, this court concluded that the plaintiffs in the *Majeski*

and *Eckstein* actions are best suited to represent specific and separate subclasses of the class: (1) the Ecksteins shall represent the subclass comprised of all individuals who purchased a BFI Interest without relying on the public offering materials and (2) the *Majeski* plaintiffs shall represent the subclass comprised of all individuals who purchased a BFI Interest in reliance on the public offering materials.

The effect of this court's decision regarding the adequacy-of-representation requirement is that this court presently believes that the two actions need to be consolidated in order to prevent the plaintiffs from duplicating their presentations to the factfinder. First, the preponderance of the factual and legal issues in both actions are identical. Second, both actions involve the identical plaintiff class and almost the identical defendants (*see* Apr. 25, 1990 Defs.Mem. in Opp. at 8). Third, as a practical matter, if the actions were allowed to proceed to trial in an unconsolidated format and the Ecksteins prevailed on their claims, then there would be no need to decide the claims of the *Majeski* plaintiffs. Although this scenario would not cause harm to the *Majeski* plaintiffs, it may cause harm to their attorneys. This court is convinced that this result would be inequitable and could prohibit the *Majeski* plaintiffs from doing all that is necessary to represent the interests of the subclass they represent. Thus, this court sua sponte consolidates the *Eckstein* and *Majeski* actions and requests the current plaintiffs' attorneys in both actions to work out among themselves who will be lead or co-lead counsel and the manner in which they will present the class action at trial.

This court, however, recognizes that the parties have not had an opportunity to brief their position on whether or not it is appropriate to consolidate these two actions. In addition, the arguments made by plaintiffs' counsel during oral argument raise the possibility that they might be unable to work out a suitable arrangement between themselves. Thus, although this court consolidates these two actions sua sponte, it will provide the parties with fourteen (14) days to: (1) comment, if they believe it is necessary, on the consolidation; (2) inform this court whether or not the plaintiffs' counsel in *Majeski* and *Eckstein* can work out a suitable arrangement pertaining to representation; and (3) whether or not this court will need to hold a hearing to choose one set of counsel as lead representative.

## II. ECKSTEIN DEFENDANTS' DISCOVERY MOTION

On March 30, 1990, the defendants moved this court to order the *Majeski* plaintiffs to produce their federal income tax returns for the years 1985 to 1989. On April 13, 1990, this court granted the defendants' motion after hearing oral argument from the parties during a telephonic hearing. During this hearing, the Ecksteins argued that this court's order should not apply to them because they had not had an opportunity to respond to the defendants' discovery motion. This court reserved ruling on the applicability of this court's decision to the Ecksteins until after they had an opportunity to respond to the defendants' motion.

On April 24th and May 24, 1990, the Ecksteins filed briefs opposing the defendants' motion. First, the Ecksteins argued that this court should apply the law of the Ninth Circuit and California when deciding defendants' motion. This court, however, rejected this argument in its June 22, 1990 decision and order when it held that in claims arising under federal law it is bound only by the law of the United States Supreme Court and the Seventh Circuit Court of Appeals (Jun. 22, 1990 Dec. at 6). Second, the Ecksteins essentially argued that their tax returns were not relevant to their action. This argument was similar to that presented by the *Majeski* plaintiffs. This court rejected the relevancy argument on the basis that the tax returns are relevant for determining damages. Accordingly, to the extent that defendants' motion for discovery of the Ecksteins' 1985 to 1989 tax returns remains pertinent, it is granted. In addition, these returns will be placed under a protective order with this court.

IT IS THEREFORE ORDERED that the plaintiffs' motions for class certification in the *Eckstein* and *Majeski* actions are GRANTED and this court certifies the following class: all persons who purchased or currently own defendant Balcor Film Investors limited partnership interests which were purchased during the period of January 8, 1985, through December 31, 1985.

IT IS FURTHER ORDERED that the plaintiffs in the *Eckstein* action are certified to represent the following subclass of the class: all persons who purchased defendant Balcor Film Investors limited partnership interests *without* relying on any of the public offering materials.

IT IS FURTHER ORDERED that the plaintiffs in the *Majeski* action are certified to represent the following subclass of the class: all persons who relied on the public offering materials in deciding to purchase defendant Balcor Film Investors limited partnership interests.

IT IS FURTHER ORDERED that the *Eckstein* and *Majeski* actions are consolidated for the remainder of the pretrial proceedings and trial.

IT IS FURTHER ORDERED that the plaintiffs in both the *Eckstein* and *Majeski* actions shall have fourteen (14) days from the date of this decision to file reports or briefs, limited to five (5) pages, and any supporting documentation on: (1) the issue of whether or not plaintiffs' counsel in the *Majeski* and *Eckstein* actions can work out a suitable arrangement pertaining to representation and (2) whether or not this court will need to hold a hearing to choose one set of counsel as lead representative.

IT IS FURTHER ORDERED that the *Majeski* and *Eckstein* plaintiffs' federal security law claims are certified for class treatment.

IT IS FURTHER ORDERED that the *Majeski* plaintiffs' state law claim of breach of fiduciary duties is certified for class treatment.

IT IS FURTHER ORDERED that the *Majeski* plaintiffs' state law claims of (1) fraud; (2) negligent misrepresentation, (3) misrepresentation—strict liability, (4) breach of contract and (5) derivative action are *not* certified for class treatment.

IT IS FURTHER ORDERED that the *Eckstein* defendants' motion for discovery of the Ecksteins' 1985 to 1989 tax returns is GRANTED, and that these documents are placed under a protective order of the court.

IT IS FURTHER ORDERED that this court will conduct a status conference or hearing in Room 284 of the United States Courthouse, 517 E. Wisconsin Avenue, Milwaukee, Wisconsin, on March 1, 1991, at 10:00 A.M. Central Standard Time, to resolve any issues which may arise from the reports or briefs the parties might file with this court in the next fourteen days.