Edmund J. WENTZKA and Dona J. Wentzka, Plaintiffs,

v.

Larry GELLMAN and Blunt, Ellis & Loewi, Inc., Defendants.

Civ. A. No. 89–C–0220.

United States District Court, E.D. Wisconsin.

March 13, 1991.

Bruce C. O'Neill, Fox, Carpenter, O'Neill & Shannon, Milwaukee, Wis., for plaintiffs.

Michael H. Schaalman, Quarles & Brady, Milwaukee, Wis., for defendants.

## DECISION AND ORDER

REYNOLDS, Senior District Judge.

### FACTS

On February 12, 1989, plaintiffs Edmund J. Wentzka and Dona J. Wentzka ("the Wentzkas") filed this action alleging that defendants Blunt, Ellis & Loewi, Inc. ("BEL"), and its employee, Larry Gellman ("Gellman"), violated various federal securities laws (Counts I–III), breached their fiduciary duty to the plaintiffs (Count IV), and committed common-law fraud (Count V) in connection with the sale of securities to the Wentzkas.

On May 7, 1990, this court denied defendants' motion to dismiss the federal securities claims contained in counts I and II of the Wentzkas' amended complaint, ruling that these claims were not barred by the then-applicable statute of limitations (May 7, 1990 Decision and Order at 7–10). In reaching its ruling, this court held that a Wisconsin three-year statute of limitations applied to the Wentzkas' claims (*Id.* at 7), and that the Wentzkas' claims did not accrue until they had discovered the defendants' alleged unlawful conduct in March 1988 (*Id.* at 10).

By the May 7, 1990 decision and order, this court did grant defendants' motions to dismiss the portions of counts I–III of the Wentzkas' amended complaint that were based on § 17 of the Securities Act of 1933 and § 15(c) of the Securities Exchange Act of 1934, ruling that these provisions did not create a private right of action (*Id.* at 10–13). Thus, the only federal securities claims now remaining in this action are based on § 10(b) of the Securities Exchange Act of 1934 ("§ 10(b)"). The other surviving claims are pendent state claims based on breach of fiduciary duty and fraud (Complaint, Counts IV–V).

On September 12, 1990, defendants moved this court to reconsider the portion its May 7, 1990 decision and order denying defendants' motion to dismiss the § 10(b) claims in Counts I and II of the Wentzkas' complaint, arguing that these claims are now time-barred under the recent case, *Short v. Belleville Shoe Mfg. Co.*, 908 F.2d 1385 (7th Cir.1990). The defendants also moved this court to dismiss the Wentzkas' pendent state claims, arguing that this court is divested of jurisdiction over these claims if the underlying federal claims are dismissed.

The Wentzkas reply that *Short* should not be applied retroactively to this case, and that this court may retain jurisdiction over the pendent state claims regardless of whether the federal claims survive.

For the reasons set forth in this opinion, this court: (1) grants defendants' motion to reconsider; (2) vacates the portion of its May 7, 1990 decision and order denying defendants' motion to dismiss Counts I and II of the amended complaint; (3) dismisses Counts I and II of the amended complaint; and (4) denies defendants' motion to dismiss the Wentzkas' pendent state claims contained in Counts IV–V of the Wentzkas' amended complaint.

The facts of this case are fully described in this court's decision and order of May 7, 1990, and only the facts relevant to defendants' motion to reconsider are recounted here.

Plaintiff Edmund J. Wentzka is a manager for Ladish Company, Inc. (Amended Complaint ¶ 1). Plaintiff Dona J. Wentzka, is the wife of Edmund Wentzka (*Id.* ¶ 2).

Defendant Larry Gellman was, at all times material to this action, a licensed stock broker and was an employee of corporate defendant BEL in that capacity (*Id.* ¶ 3). Defendant BEL is a Delaware corporation with its principal office in Milwaukee, Wisconsin, and is a licensed securities broker-dealer (*Id.* ¶ 4).

The Wentzkas allege that the defendants solicited them to open an account in 1982 (*Id.* ¶ 6). The Wentzkas further allege that although they had never dealt with a stockbroker before, they opened an investment account with BEL and that they expressed an investment objective of conservative appreciation (*Id.*). The Wentzkas also allege that over a period of time they turned over to the defendants stock which Edmund Wentzka had obtained through his employment at Ladish having a net value of $132,-300.00 (*Id.* ¶ 7). From 1982 to the present the defendants allegedly churned and dissipated the Wentzkas' account by investing in speculative securities associated with Amrecorp Realty, Inc. ("Amrecorp"), and associated companies, which companies were successors to the real estate department of BEL and which were founded and run by four former executives of BEL (*Id.*).

The Wentzkas assert that upon the defendants' recommendations they invested the following amounts of money in real estate limited partnerships in which Amrecorp was the general partner: (1) $20,000 in July 1982; (2) $72,500 in April of 1983; and (3) $30,000 in March 1984 (*Id.* ¶ 8). The Wentzkas assert that they made investments in other speculative securities as well, at the defendants' advice (*Id.*). In making these investments, the Wentzkas allege that they reasonably relied upon the defendants' representations that these investments were consistent with the Wentzkas' conservative investment approach, when the investments were actually highly risky and speculative (*Id.* ¶¶ 9–10). The Wentzkas also assert that, due to the relationship between BEL and Amrecorp, the defendants failed to disclose that they had relaxed their usual due diligence in evaluating the Amrecorp securities and that they were marketing these securities to a wide range of customers regardless of their investment objectives (*Id.* ¶ 10).

Edmund Wentzka asserts that during all relevant years, he checked with defendant Gellman two or three times per year and with Amrecorp once or twice per year to inquire about the status of his investments, and that on all these occasions these parties falsely informed him that his investments were faring well (*Id.* ¶ 13). The Wentzkas assert that their reliance upon the defendants' representations concerning the status of their investments was reasonable because: (1) no routine status reports on Amrecorp securities were available because these securities were not traded on public markets and (2) the Wentzkas were unsophisticated investors who were unable to evaluate personally the performance of their investments (*Id.*). For these reasons, the Wentzkas assert that they:

> did not and could not have had any knowledge or reason to know of the worthless value of their investments until after Mach (sic) of 1988, when the plaintiffs learned that one of the partnerships in which the defendants had placed their assets had gone bankrupt.

(*Id.*) (emphasis added).

## ANALYSIS

### I. Defendants' Motion to Reconsider This Court's May 7, 1990 Decision and Order

The defendants urge this court to reconsider its decision denying defendants' motion to dismiss the Wentzkas' § 10(b) claims. In support of their motion, the defendants cite the decision of the Seventh Circuit Court of Appeals ("Seventh Circuit") in *Short*, 908 F.2d 1385 (7th Cir. 1990), which was issued in July 1990, roughly two months after this court denied defendants' motion to dismiss. In *Short*, the Seventh Circuit held: (1) that "federal and not state law supplies the statute of limitations in suits under § 10(b) and Rule 10b–5," 908 F.2d at 1389, and (2) that the three-year statute of repose contained in § 13 of the Securities Act of 1933 is the controlling federal statute. *Id.* at 1392. Section 13, "sets three years after the sale as the outer limit for litigation," *Id.* at

1392, in that § 13 permits a plaintiff to bring an action within one year after discovery, but " '[i]n no event ... more than three years after the sale.' " *Id.* at 1391 (quoting § 13 of the Securities Act of 1933). Thus, under the § 13 one year/three year rule prescribed in *Short,* a plaintiff must bring a 10b–5 action within three years after the allegedly fraudulent sale, regardless of when the plaintiff actually discovered the § 10(b) or 10b–5 violation. Because the Wentzkas filed their lawsuit in February 1989, more than three years after their last purchase of Amrecorp securities from defendants, their claim would be barred if *Short* were applied retroactively.

Conceding that their remaining federal claims would be barred under *Short,* the Wentzkas argue that *Short* should not be applied retroactively in this case. The Wentzkas correctly note that the Seventh Circuit declined in *Short* to decide the retroactivity issue:

> We leave for the future all questions concerning retroactive application of this decision. Retroactivity has not been briefed, and the retroactive application of decisions affecting periods of limitations is a question of some subtlety depending on the nature of reliance interests. *See Chevron Oil Co. v. Huson,* 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971).

*Id.* at 1389–90 (other citations omitted). The Wentzkas argue that under the standards set forth in *Chevron Oil,* the retroactive application of *Short* is inappropriate in this case.

Although it does not set forth a definitive rule on the retroactivity issue, *Short* nonetheless provides significant guidance on this issue. Besides identifying the controlling authorities on the retroactivity issue, *Short* also underscores that a plaintiff seeking to avoid the retroactive application of the one-year/three-year rule must demonstrate reliance on the previously applicable state statute of limitations. Writing for the court, Judge Easterbrook noted:

> It is enough for the moment to observe that new rules of law apply in the cases that establish them and that *Short can-*

*not have relied on Illinois law, because she claims to have been unaware of the basis for litigation until a short time before filing suit.* Effects of reliance on our former holdings may be determined when the plaintiff demonstrates reliance. *Id.* at 1390 (emphasis added).

■ Upon consideration of the able arguments that counsel made in their briefs and during oral argument on this issue, this court concludes that the Wentzkas cannot avoid the retroactive application of the *Short* rule because they have failed to demonstrate that they actually relied on the formerly applicable Wisconsin statute of limitations in deciding when to file their lawsuit. This court therefore holds that the defendants are entitled to retroactive application of *Short.*

As the Seventh Circuit noted in *Short,* the Supreme Court in *Chevron Oil* defined the circumstances under which a decision will be denied full retroactive effect. *Id.* at 1389–90. In *Chevron Oil,* the Supreme Court identified three separate factors bearing upon the retroactivity question: (1) whether the decision "establish[ed] a new principle of law ... by overruling clear past precedent on which litigants may have relied," 404 U.S. at 106, 92 S.Ct. at 355; (2) whether retroactive application of the rule in question, considering its prior history, purpose, and effect, "will further or retard its operation," *Id.* at 107, 92 S.Ct. at 355 (citations omitted); and (3) whether the retroactive application of the new rule "could produce substantial inequitable results." *Id.* (citations omitted). To the extent that "prospective-only application is the exception rather than the rule, the party seeking to invoke *Chevron Oil* bears the burden of proving that such limited application is justified." *Valencia v. Anderson Bros. Ford,* 617 F.2d 1278, 1288 (7th Cir.1980) (citation omitted), *rev'd on other grounds,* 452 U.S. 205, 101 S.Ct. 2266, 68 L.Ed.2d 783 (1981). Accordingly, in order to justify such prospective-only application, a party must satisfy all three of the factors listed in *Chevron Oil. Valencia,* 617 F.2d at 1289; *Schaefer v. First National Bank of Lincolnwood,* 509 F.2d 1287, 1294 (7th Cir.

1975), *cert. denied,* 425 U.S. 943, 96 S.Ct. 1682, 48 L.Ed.2d 186 (1976). As noted above, the *Short* decision emphasizes particularly that plaintiffs seeking to avoid the retroactive application of *Short* must prove reliance on the Seventh Circuit's former holdings on the statute of limitations issue. *See Short,* 908 F.2d at 1390.

In this case, the Wentzkas have failed to bear their burden on the retroactivity issue, because they have not satisfied the reliance element of the *Chevron Oil* test. As an initial matter, the Wentzkas are correct in pointing out that *Short* avowedly represents a break with the long-established precedent of borrowing relevant state statutes of limitations. As Judge Easterbrook pointed out in *Short:*

> For many years we have applied to cases under Rule 10b–5 statutes of limitations borrowed from state blue sky statutes, adding an overlay of tolling principles from state and federal law....
>
> ... Federal courts are so accustomed to turning to state periods of limitations that we (and our colleagues in other circuits) did this on auto-pilot, without discussing whether something differentiated securities laws from other statutes.

*Id.* at 1387 (citations omitted). Regardless of whether the Seventh Circuit had expressed its discontent with the practice of borrowing state periods of limitations in earlier cases such as *Norris v. Wirtz,* 818 F.2d 1329 (7th Cir.1987), it is beyond dispute that the Seventh Circuit had expressly declined to deviate from this practice, *Id.* at 1333, until it decided *Short. Short,* 908 F.2d at 1389.

Nonetheless, the Wentzkas have failed to demonstrate that they actually relied on the former rule of borrowing state limitations periods in deciding when to file their claim, such that it would be unjust to apply the federal period of limitations prescribed in *Short* to their claims. Indeed, the Wentzkas claim to have become aware of the defendants' alleged fraudulent acts only in March of 1988 (Amended Complaint, ¶ 13), a date more than three years after they made their final purchase of an Amrecorp security in March 1984 (*Id.* ¶ 8). Thus,

like the plaintiff in *Short,* the Wentzkas cannot have relied on state law, because they claim to have been unaware of the basis for litigation until a short time before filing suit and roughly one year after the one year/three year statute of repose of § 13 had already run. *Short,* 908 F.2d at 1390.

Having decided that the Wentzkas have failed to demonstrate actual reliance on past precedent, this court need not address the remaining prongs of the *Chevron Oil* test. *Valencia,* 617 F.2d at 1289. This court notes, however, that the Wentzkas would not satisfy the second prong of the *Chevron Oil* test either, because they have not demonstrated that retroactive application of *Short* would retard the operation of the § 13 statute of repose in this case. The Seventh Circuit identified in *Short* several advantages resulting from applying the one year/three year rule. These advantages include: (1) reducing the costs and uncertainties attendant to borrowing state periods of limitations, *Short* at 1388–89, and (2) discouraging plaintiffs from using equitable tolling principles to postpone filing suit for strategic reasons beyond three years after purchase. *Id.* at 1392. Although it is not clear that either of these purposes would actually be served by applying § 13 in this case, this court has no basis for finding that these purposes would be retarded by such application of § 13.

This court is therefore compelled by *Chevron Oil* to apply *Short* retroactively in this case. Accordingly, this court must dismiss the Wentzkas' remaining federal claims as untimely under the § 13 one-year/three-year statute of repose.

Nonetheless, this court is troubled by the harsh results, such as the dismissal of the instant claims, that are generated by the Seventh Circuit's arbitrary decision to apply the § 13 statute of repose to § 10(b) claims. Statutes of limitations admittedly serve some important legal functions besides reducing court dockets. For example, they cut off claims in cases in which evidence is likely to have become stale or in which potential defendants have particularly strong interests in repose. But the § 13

one-year/three-year rule serves such interests only at the very high cost of barring potentially meritorious § 10(b) claims. As in the Wentzkas' case, this cost is often borne by the least sophisticated parties who are both least capable of uncovering the fraud that has been perpetrated upon them and who may be least able to afford that cost. Such unfortunate results are almost predictable in § 10(b) cases involving securities that are not publicly traded. In such cases, the defrauding party may well be able to conceal his fraud from an investor for longer than three years after the sale; under § 13 he is richly rewarded for such successful sleight of hand.

Judge Easterbrook's opinion in *Short* underestimates these oppressive results of applying the § 13 statute of repose to these cases involving concealment. He observes:

> Investors ... have [under § 13] a more powerful incentive to investigate rather than accept another person's word without question, as [plaintiff] said she did. Prudent investors almost always can sniff out fraud (or enough smoke to justify litigation) within three years. Section 13 cuts off only the claims of the most trusting or somnolent—or the most wily, those who wanted to wait as long as possible.

*Short*, 908 F.2d at 1392. This class of "most trusting" investors is likely to be larger than the above passage would suggest. The primary effects of the *Short* decision will thus be to deprive these people of their day in court.

This court's uneasiness regarding the application of § 13 to these claims would be entirely alleviated if Congress had expressly chosen this period of limitations for § 10(b) violations. But, of course, Congress did not do so, and as a result the courts had until now engaged in the byzantine gap-filling process of borrowing limitations periods from state law. Although the borrowing practice was an unsatisfactory solution, the recognized need for a uniform statute of limitations does not argue unambiguously in favor of the essentially arbitrary judicial adoption of § 13. Aside from hoping that Congress will in the future adopt express statutes of limitations for every statutory cause of action, this court cannot offer a solution to the arbitrary borrowing practice. Nonetheless, this court observes that the one-year/three-year rule of § 13 is not particularly well-suited to § 10(b) claims, because it fails to account for the very real possibility that fraud will be hidden from investors for more than three years after sale, particularly in the case of securities that are not publicly traded.

## II. Defendants' Motion to Dismiss the Wentzkas' Pendent State Claims

■ Although this court has dismissed the Wentzkas' federal claims before trial, this court is entitled to retain pendent jurisdiction over this case. Despite the Supreme Court's dictum in *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966) that the dismissal of all federal claims before trial requires the district court to relinquish its pendent claim jurisdiction, it is well-recognized that this court may continue to exercise pendent jurisdiction "in appropriate cases even when the federal claims have fallen out before trial." *Graf v. Elgin, Joliet & Eastern Ry. Co.*, 790 F.2d 1341, 1347 (7th Cir.1986). In applying the language of *Gibbs*, the Seventh Circuit has noted that:

> Trial is simply a convenient benchmark marking the point by which substantial resources have surely been committed. If those resources are expended without a trial, the essential purpose of the doctrine of pendent jurisdiction may be served by retaining the case.

*Graf*, 790 F.2d at 1348 (citations omitted). The district court may therefore retain pendent jurisdiction in cases in which it has already committed such substantial resources that sending the case to another court would cause a substantial duplication of judicial effort. *See Rosado v. Wyman*, 397 U.S. 397, 404–05, 90 S.Ct. 1207, 1213–14, 25 L.Ed.2d 442 (1970); *Graf*, 790 F.2d at 1347–48.

■ This case has already been in this court for over two years. Having already

heard two oral arguments and having decided a motion to dismiss as well as the instant motion to reconsider, this court is familiar with the facts and issues involved in this case. This court shall therefore continue to exercise pendent jurisdiction over it.

IT IS THEREFORE ORDERED that the defendants' September 12, 1990 motion to reconsider this court's May 7, 1990 decision and order is GRANTED.

IT IS FURTHER ORDERED that the portion of this court's May 7, 1990 decision and order denying the defendants' March 20, 1989 motion to dismiss Counts I and II of the Wentzkas' amended complaint is VACATED.

IT IS FURTHER ORDERED that Counts I and II of the Wentzkas' amended complaint is GRANTED.

IT IS FURTHER ORDERED that the September 12, 1990 motion of defendants Larry Gellman and Blunt, Ellis & Loewi to dismiss the pendent state claims contained in Counts IV–V of the Wentzkas' amended complaint is DENIED.