**Ralph MAJESKI, Joseph Yach, Janice Waisman, Larry R. Peterson, Thomas Weil, Lee Aldridge, Randy Karpinsky, Kenneth Kulas, Robb S. Elliott and Raymond Harding, Plaintiffs,**

**v.**

**BALCOR ENTERTAINMENT COMPANY LTD., an Illinois corporation; Shearson Lehman Hutton, Inc., f/k/a Shearson Lehman Brothers, Inc., and f/k/a Shearson Lehman/American Express, Inc., a Delaware corporation; the Bal-**cor Company, an Illinois corporation; Balcor/American Express Inc., an Illinois corporation; Balcor Securities Company, an Illinois corporation, the American Express Company, a New York corporation; New World Pictures, Ltd., a California corporation, and Balcor Film Investors, an Illinois Limited Partnership, Defendants.**

**Robert ECKSTEIN and Sylvia Eckstein, on Behalf of themselves and all others similarly situated, Plaintiffs,**

**v.**

**BALCOR FILM INVESTORS, Balcor Entertainment Company, the Balcor Company, the Balcor Securities Company, Jerry M. Reinsdorf, Robert A. Judelson, James E. Finley, Gregory S. Junkin, Barry R. Jackson, Joseph A. Kruszynski, New World Entertainment, Ltd., Lawrence L. Kuppin, Robert Rehme, and Harry E. Sloan, Defendants.**

Civ. A. Nos. 88–C–1079, 89–C–1315.

United States District Court, E.D. Wisconsin.

March 11, 1992.

George P. Kersten, E. Campion Kersten, Bruce J. Landgraf, Kersten & McKinnon, Jerry H. Friedland (of counsel), Galanis & Friedland, Milwaukee, Wis., Michael S. Glassman, Clemens, Glassman & Clemens, Los Angeles, Cal., Robin F. Zwerling, Zwerling, Schachter & Zwerling, Jules Brody, Stull, Stull & Brody, New York City, for plaintiffs.

Steven Bashwiner, Mary Ellen Hennessy, Katten Muchin & Zavis, Chicago, Ill., Ross A. Anderson, Frisch Dudek Ltd., Milwaukee, Wis., Dennis Perluss, Hufstedler, Miller, Kaus & Beardsley, Los Angeles, Cal., Robert J. Walner, Gen. Counsel, The Balcor Co., Skokie, Ill., H. Nicholas Berberian, Robert Mandel, Neal Gerber & Eisenberg, Chicago, Ill., Terry E. Mitchell, Mitchell, Baxter & Zieger, Milwaukee, Wis., John A. Lawrence, Richman, Lawrence & Mann, Beverly Hills, Cal., Robert B. Ulrich, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, Ill., for defendants.

## DECISION AND ORDER

REYNOLDS, Senior District Judge.

### INTRODUCTION

This action concerns a public offering of limited partnership interests in Balcor Film Investors ("BFI"). BFI was formed to pro-

duce and distribute movies pursuant to an agreement with a motion picture company, New World Entertainment, Ltd. ("New World"). The initial offering was unsuccessful, and the Securities Exchange Commission required that the purchases of BFI interests be cancelled. On October 11, 1985, the prospectus was amended to make a second offering and to seek resubscription by previous investors. The interests were sold between October 11, 1985, and December 31, 1985. Both the *Majeski* and *Eckstein* classes[1] allege that the defendants violated § 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5 by portraying the BFI investment as "safe and conservative." This court concludes, as discussed below, that the defendants adequately conveyed the risky nature of the BFI investment.

Presently before the court is the defendants' November 5, 1991 motion for partial summary judgment on all remaining federal claims in both *Majeski* and *Eckstein.* This court previously dismissed the *Majeski* class claims that the defendants violated §§ 17(a) and 12(2) of the Securities Act of 1933. The only additional federal claim alleged by the *Majeski* class is that the defendants violated § 10(b) and Rule 10b–5. The *Eckstein* class only alleges violations of § 10(b) and Rule 10b–5 in its complaint. The defendants argue that the federal securities law claims under § 10(b) and Rule 10b–5 alleged in both *Majeski* and *Eckstein* are barred by the statute of limitations in light of a recent Supreme Court decision, *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,* —— U.S. ——, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991) ("*Lampf*").

In *Lampf,* the Supreme Court established a uniform statute of limitations for Section 10(b) claims that "[l]itigation instituted pursuant to § 10(b) and Rule 10b–5 ... must be commenced within one year after the discovery of the facts constituting

the violation and within three years after such violation." *Lampf* 111 S.Ct. at 2782 (footnote omitted). The Supreme Court applied this rule retroactively.

On December 20, 1991, the President signed Senate Bill 543 into law, which essentially overruled *Lampf.* The new law states that:

> The limitation period for any private civil action implied under section 10(b) of this Act that was commenced on or before June 19, 1991, shall be the limitation period provided by the laws applicable in the jurisdiction, including principles of retroactivity, as such laws existed on June 19, 1991.

Federal Deposit Insurance Corporation Improvement Act of 1991, Public L. No. 102–242, § 476, 105 Statutes 2236, 2387 (1991).

The defendants argue that the *Majeski* and *Eckstein* classes knew or should have known of their claim in 1985 when they received the BFI prospectus, which contained high risk disclosures; these high risk disclosures would have been in conflict with the "safe and conservative" investment portrayal which the plaintiffs allege the defendants made. Because the last possible day of sale for BFI investments and of receipt of the prospectus was December 31, 1985, any claim accruing at this time had to be filed by December 31, 1988, to meet the three-year prong of the statute of limitations, as this court discusses below. Alternatively, the defendants argue that the plaintiffs knew or should have known of their claim no later than May 14, 1987, when the plaintiffs received a report that BFI had produced all its films, and had a net loss of $14 million. Any claim accruing at this time had to be filed by May 14, 1988, to meet the one-year prong of the statute of limitations, as this court discusses below.

1. On August 23, 1989, the Judicial Panel on Multidistrict Litigation ordered, pursuant to Title 28 U.S.C. § 1407, that the case *Robert Eckstein, et al. v. Balcor Film Investors, et al.* ("*Eckstein*") be transferred from the Central District of California to this court for consolidated pretrial proceedings with *Ralph Majeski, et al. v.* *Balcor Film Investors, et al.* ("*Majeski*"). On February 27, 1991, this court permanently transferred, pursuant to Title 28 U.S.C. § 1404(a), *Eckstein* to this court. This court also consolidated *Majeski* and *Eckstein* for pretrial and trial purposes.

## ANALYSIS

■ Rule 56(c) of the Federal Rules of Civil Procedure provides that a federal district court shall grant a motion for summary judgment if the pleadings, depositions, answers to interrogatories, admissions, and affidavits indicate that no material facts are in dispute and that the moving party is entitled to judgment as a matter of law. *Howland v. Kilquist,* 833 F.2d 639, 642 (7th Cir.1987). The party moving the court for summary judgment has the burden of proving that no material facts are in dispute, and the court must review the record with all reasonable inferences being drawn in favor of the non-moving party. *Becker v. Tenenbaum-Hill Associates, Inc.,* 914 F.2d 107, 110 (7th Cir.1990); *Reardon v. Wroan,* 811 F.2d 1025, 1027 (7th Cir.1987).

*Applicable Law*

■ The *Eckstein* class argues that since its complaint was originally filed on February 10, 1989, in the Ninth Circuit, the Ninth Circuit's statute of limitations should be applied. California Code of Civil Procedure § 338(d), which the Ninth Circuit has borrowed for 10(b) purposes, allows actions filed within three years of discovery of the facts constituting fraud.

The defendants argue that the new law mandates that "the jurisdiction" is the Seventh Circuit. This court agrees with the defendants; the Seventh Circuit was "the jurisdiction" for this action as of June 19, 1991. Additionally, this court's earlier analysis and conclusion that Seventh Circuit law applies to the *Eckstein* class is still applicable. *See Eckstein v. Balcor Film Investors,* 740 F.Supp. 572 (E.D.Wis.1990). Thus, the Seventh Circuit law as it existed on June 19, 1991 applies.

■ The relevant Seventh Circuit case is *Short v. Belleville Shoe Mfg. Co.,* 908 F.2d 1385 (7th Cir.1990), *cert. den.,* —— U.S. ——, 111 S.Ct. 2887, 115 I..Ed.2d 1052 (1991) (*"Short"*). In *Short,* the Seventh Circuit decided to change its practice of consulting state blue sky statutes to determine the statute of limitations for actions brought under § 10(b) and Rule 10b-5.

The court held that § 13 of the Securities Act of 1933 is the controlling statute of limitations for actions under § 10(b) and Rule 10b-5. *Id.* at 1389. That statute provides:

> No action shall be maintained to enforce any liability ... unless brought within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence.... In no event shall any such action be brought to enforce a liability created ... more than three years after the sale.

*Short* at 1390. In *Short,* the Seventh Circuit applied this statute of limitations to the plaintiff in that case. The Seventh Circuit specifically declined to determine whether its decision should be applied retroactively to other actions.

All the parties in this action discuss *Chevron Oil v. Huson,* 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), in which the Supreme Court established three factors to consider when determining whether newly-created court law should be applied retroactively: (1) whether the decision "establish[es] a new principle of law, either by overruling clear past precedent on which litigants may have relied ... or by deciding an issue of first impression whose resolution was not clearly foreshadowed" (citations omitted); (2) "whether [the] retrospective operation will further or retard its [the new rule's] operation" (citation omitted); and (3) whether the retroactive application "could produce substantial inequitable results" (citation omitted). *Id.* at 106–107, 92 S.Ct. at 355–356.

While the Seventh Circuit has not yet addressed the issue of whether the *Short* decision should be applied retroactively, this court has applied *Short* retroactively when no reliance on the formerly applicable statute of limitations has been shown. *See Wentzka v. Gellman,* 759 F.Supp. 484, 487 (E.D.Wis.1991).

In a recent decision, the Supreme Court greatly reduced, if not abolished, the impact of *Chevron Oil* when it held that "it is error to refuse to apply a rule of federal

law retroactively after the case announcing the rule has already done so." *See James B. Beam Distilling Co. v. Georgia,* —— U.S. ——, 111 S.Ct. 2439, 2446, 115 L.Ed.2d 481 (June 20, 1991) (*"Beam"*). This decision was made one day after the June 19, 1991 date established by the new law. *Beam* clarifies, but does not create new law. Thus, the then existing law in the Seventh Circuit must be applied, which means that *Beam* directs this court to apply the rule adopted by the Seventh Circuit in *Short* to this action.

This court notes that the policy reasons for a uniform statute of limitations are great. *See, e.g., Short,* 908 F.2d at 1388–89. Those policy considerations are even stronger in a case such as this, where a class action involves a number of people from different states.

*Majeski*

It is clear that the *Majeski* complaint, filed on October 11, 1988, was timely filed with respect to the three-year prong of the applicable statute of limitations. The defendants argue that the *Majeski* class filed its complaint more than one year after it knew or should have known of the facts supporting its alleged claim, which brings us to the question of whether the prospectus and its accompanying reports did or should have put the plaintiffs on notice of their claims.

In support of their proposition, the defendants argue that the investors were repeatedly warned of the risky nature of the BFI investment, beginning with the prospectus and then repeated in the annual reports.[2] The prospectus itself contained badges of riskiness. The following quotes list some of these badges, with this court's emphasis.

THIS OFFERING INVOLVES CERTAIN RISK FACTORS. In this regard, investors should consider that:

(1) Interests are being offered only to persons who meet the suitability standards set forth in this Prospectus. See "Who Should Invest." ...

. . . .

(4) The success of a motion picture is largely dependent upon public taste, which cannot be accurately anticipated, and other factors beyond the control of the General Partner. Accordingly, it is *impossible for anyone to predict* with a high degree of certainty whether any particular picture or group of pictures will be financially successful. See "Risk Factors—The Motion Picture Industry Generally."

For further discussion of risks of the offering, see "Risk Factors."

Jan. 8, 1985 BFI Prospectus at 1 (emphasis added).[3]

An investment in the Partnership involves a *high degree of risk* .... Accordingly, Interests will be sold only to a *person who represents in writing that he has adequate means of providing for his current needs and personal contingencies and no need for liquidity of this investment* ....

*Id.* at 2 (Who Should Invest) (emphasis added).

The production, distribution and exploitation of motion pictures is a complex and *risky undertaking and there can be no assurance that the Partnership's investment objectives will be realized in whole or in part.*

*Id.* at 4 (Partnership Investment Objectives) (emphasis added).

The following briefly summarizes certain *significant risks* relating to an investment in the Partnership. These risks are more completely discussed in the "Risk Factors" section of this Prospectus and in the other sections of this Prospectus referred to therein. The following summary is qualified in its entirety by reference to such "Risk Factors" section and to the other sections of this Prospectus cited therein.

—An investment in the Partnership is subject to all of the risks associated with the motion picture industry. The

---

2. The court has attached a chart to this opinion to aid the reader in following the progression of events relevant to this action.

3. A copy of the prospectus can be found attached as Ex. H to the defendants' motion.

success of any motion picture is largely dependent upon public taste, which cannot be accurately anticipated. In addition, the success of a motion picture is dependent upon several factors, including local promotion, the cooperation and acceptance of exhibitors and the popularity of other motion pictures being distributed at the time a picture is released. The motion picture industry is highly competitive and Partnership Pictures will be competing with pictures from many sources, including pictures produced and distributed by companies which are better capitalized and better established in the motion picture industry than are the Partnership and New World.

—The Partnership's arrangements with New World reserve for New World a substantial amount of discretion with respect to several significant factors relating to the development, acquisition, production and distribution of Partnership pictures. The Partnership will be largely dependent upon the performance by New World of its obligations under the Production Agreement, including New World's ability to identify motion picture projects with potential for commercial appeal, to produce commercially viable pictures on budget and on schedule and to exploit such pictures successfully.

—The Partnership will also be dependent upon the overall financial performance of all aspects of New World's operations for the value of the Preferred Stock and to generate sufficient earnings (in excess of present earnings) to make interest and principal payments when due under the Note. Between accountings to the Partnership (monthly, for an initial period, and quarterly thereafter), *amounts otherwise payable to the Partnership may be commingled with other funds belonging to New World or other parties.* In the event of the insolvency of New World, the Partnership *may be unable to receive payments* from New World as and when they are due. In addition, the Partnership has agreed with New World and its principal lender to *forego certain legal remedies* which would otherwise be available to it under certain conditions.

—The Partnership intends to incur indebtedness in connection with the financing of Distribution Expenses. The cost of this borrowing may reduce profits or increase losses resulting from the operations of the Partnership.

—The General Partner will have sole responsibility for, and control of, all aspects of the Partnership's operations, and the Limited Partners will be entirely dependent upon the General Partner for the management of the Partnership's business. *The Partnership is newly formed and has no operating history upon which to base an evaluation of investment in the Partnership.*

—The General Partners and New World will be subject to various *conflicts of interest* in connection with the transactions provided for in the Production Agreement.

*Id.* at 6 (Risk Factors) (emphasis added).

An investment in the Partnership involves a *high degree of risk* and *should only be considered by persons who can afford to lose their entire investment in the Partnership.* In addition to the factors set forth elsewhere in the Prospectus (see "Description of Motion Picture Industry and New World Pictures" and "Business of the Partnership"), investors should carefully consider the following:

1. *The Motion Picture Industry in General.* The Partnership's activities are subject to all of the risks associated with the motion picture industry. *Only a relatively small percentage of motion pictures released in the country generate sufficient receipts to return to producers their investment in pictures.* In view of the foregoing, it is *impossible for anyone to predict* whether any particular picture or group of pictures will be financially successful and there can be no assurance that the Partnership will recover its costs in connection with the

production, acquisition and distribution of the Partnership Pictures.

2. *Developments in the Motion Picture Industry.* It is not possible to predict accurately the other effects that recent technological developments, and the developments that may occur in the future, may have on the value of rights in certain markets or media, the motion picture industry in general or on the ability of Partnership Pictures to generate revenues.

. . . .

10. *No Operating History.* The Partnership is newly formed and has *no operating history upon which to base an evaluation of investment in the Partnership.* The Partnership will be competing with companies which are better capitalized and better established in the motion picture industry.

*Id.* at 27–30 (Risk Factors) (emphasis added).

The defendants further argue that the annual reports did or should have put the *Majeski* class on notice that the BFI investment was not a conservative investment as the plaintiffs allege they were told:

Based on New World's estimates of ultimate revenues from the 11 partnership pictures released through June 30, 1986, and the additional production and distribution costs the partnership has committed to pay relating to these pictures, *the general partner does not believe the partnership will fully recover all of its investment in these pictures*

. . . .

Aug. 13, 1986 BFI Second Quarter 1986 Report to Investors and Interim Financial Statements at 1 (*Operations*) (emphasis added.) [4]

Based on estimates provided by New World regarding the ultimate revenues expected to be generated from all markets for the eleven films released through June 30, 1986, and the additional

production and distribution costs to be paid, *the Partnership does not believe it will recover its total investment in these films.*

*Id.* at 8 (Management's Discussion and Analysis, *Operations*) (emphasis added).

Based on estimates provided by New World regarding the ultimate revenues expected to be generated from all markets for the films released through September 30, 1986 [eighteen total], and the additional production and distribution costs to be paid, *the Partnership does not believe it will recover its total investment in these films.*

Nov. 13, 1986 BFI Third Quarter 1986 Interim Financial Statements at 8 (Management's Discussion and Analysis, *Operations*) (emphasis added).[5]

Based on estimates regarding the ultimate revenues expected to be generated from all markets for the films released through December 31, 1986 [nineteen total], and the additional production and distribution costs to be paid, *the Partnership does not believe it will recover its total investment in these films.*

Apr. 6, 1987 BFI 1986 Annual Report at 2 (Management's Discussion and Analysis of Financial Condition and Results of Operations, *Operations*) (emphasis added).[6]

All of the Partnership's twenty-three motion pictures were released as of March 31, 1987 and are generating cash receipts from domestic and foreign theatrical exploitation, domestic and foreign home video, pay television and domestic television. . . . Based on estimates regarding the ultimate revenues expected to be generated from all markets for the films released through March 31, 1987 and the additional distribution costs to be paid, *the Partnership does not believe it will recover its total investment in these films* . . . . The estimated ultimate revenues for the films as of March 31, 1987

---

4. A copy of this report can be found attached as Ex. A to the defendants' motion. This court refers to the reports by the typewritten dates on the reports. Apparently, there was often a several month delay between the date and the mailing of the reports to the investors.

5. A copy of this report can be found attached as Ex. B to the defendants' motion.

6. A copy of this report can be found attached as Ex. C to the defendants' motion.

total approximately $90,885,000 and the ultimate production and distribution costs total approximately $105,236,000, thus *resulting in an overall net loss of approximately $14,351,000,* all of which has been recognized through March 31, 1987.

May 14, 1987 BFI First Quarter 1987 Interim Financial Statement at 6 (Management's Discussion and Analysis, *Operations*) (emphasis added).[7]

All of the Partnership's twenty-three motion pictures were released as of June 30, 1987 and are generating cash receipts from domestic and foreign theatrical exploitation, domestic and foreign home video, pay television and domestic television.... Based on estimates regarding the ultimate revenues expected to be generated from all markets for the films released through June 30, 1987 and the additional distribution costs to be paid, *the Partnership does not believe it will recover its total investment in these films* .... The estimated ultimate revenues for the films as of June 30, 1987 total approximately $87,000,000 and the ultimate production and distribution costs total approximately $104,482,000, thus *resulting in an overall net loss of approximately $16,982,000.*

Aug. 18, 1987 BFI Second Quarter 1987 Interim Financial Statement at 7 (Management's Discussion and Analysis, *Operations*) (emphasis added).[8]

The *Majeski* class argues that supplemental literature portrayed the BFI investment as "safe" and "conservative," and that "[t]he 'worst case scenario' for this investment was a return of capital. A probable scenario would involve a doubling of money and a best case scenario was described as 'who knows.'" Dec. 20, 1991

Br. at 28; *see also* Feb. 24, 1989 Am. Compl. ¶ 12. The class further argues that "[t]he investors were entitled to assume that the Prospectus contained truthful information ... the investors believed they were relying on information [contained in the supplemental literature] consistent with the Prospectus." *Id.* at 29–30.[9] Additionally, the reports were "not inconsistent with the offering literature, which had told investors some movies may be losers but that modest success by a few, or even by one movie, would make the overall venture profitable, potentially very profitable, and that the income from a variety of sources for BFI would nevertheless produce a successful investment." *Id.* at 5.

The *Majeski* class asserts that the first time the class members were made aware of any fraudulent actions was in May–July 1988, when the investors were told: "Based upon the performance of the Partnership's films to date, as well as New World's estimates of ultimate revenues from exploitation of the pictures and related expenses, we do not anticipate receiving sufficient net revenues to return all of investors' original capital." May 13, 1988 BFI 1987 Annual Report (July 1988 Silverstein [Balcor Chairman and CEO] letter) at 1.[10] This discovery date would therefore defeat the defendants' argument that *Majeski* was not timely filed with respect to the one-year prong of the statute of limitations. The *Majeski* class argues that their position on discovery creates questions of fact as to whether the complaint was filed within one year after the violation was or should have been discovered.

■ The standard for determining when fraud should have been discovered,

---

**7.** A copy of this report can be found attached as Ex. D to the defendants' motion. This report was mailed to the investors in August 1987 (Jan. 6, 1992 Cody Aff. ¶¶ 3–4).

**8.** A copy of this report can be found attached as Ex. E to the defendants' motion.

**9.** The *Majeski* class emphasizes the following language from the prospectus: "Although the information contained in such [supplemental] literature does not conflict with any of the in-

formation contained in this Prospectus...." Jan. 8, 1985 BFI Prospectus at 69 (Supplemental Literature). That sentence continues: "such material does not purport to be complete, and should not be considered as a part of this Prospectus ... or as incorporated in this Prospectus ... or as forming the basis of the offering of the Interests described herein." *Id.*

**10.** A copy of this letter can be found attached as Ex. L to the Dec. 13, 1991 Kersten Aff.

however, is an objective one: were there sufficient facts to put a reasonable person on inquiry notice of possible fraud. *DeBruyne v. Equitable Life Assurance Soc'y of the U.S.*, 920 F.2d 457, 466 (7th Cir. 1990); *Hupp v. Gray*, 500 F.2d 993, 997 (7th Cir.1974). This question may be resolved on summary judgment. *DeBruyne*, 920 F.2d at 466.

■ This court finds that there were sufficient facts present in the prospectus itself, and supplemented by the numerous reports which discussed the losses associated with the released movies, to put the *Majeski* class on notice that the BFI investment was risky and not in conformance with the representations regarding the investments' returns which the class alleges were made. There were numerous warnings, conspicuously placed throughout the prospectus, that clearly and specifically discussed the risky nature of the BFI investment. The reports additionally told the investors that the movies were not bringing in money. These warnings, when viewed in light of the optimistic statements regarding the BFI investment that the class alleges were made, should have put a reasonable investor on notice that the BFI investment was not "safe and conservative." Thus, to meet the one-year prong of the statute of limitations, the *Majeski* complaint had to be filed by May 14, 1988.[11] Because the *Majeski* class knew or should have known of their alleged claim more than one year before the *Majeski* complaint was filed on October 11, 1988, the *Majeski* § 10(b) claim must be dismissed as untimely. Thus, the *Majeski* complaint has no remaining federal claims. The *Majeski* complaint also included a number of state law claims. On January 18, 1991, 134 F.R.D. 240, this court certified for class treatment the *Majeski* state law claim for breach of fiduciary duties. This court declined to certify for class treatment the *Majeski* state law claims of fraud, negligent misrepresentation, misrepresenta-

tion—strict liability, breach of contract and derivative action. The dismissal of all the federal claims requires this court to relinquish its pendent claim jurisdiction and therefore dismiss this entire action. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).

The *Majeski* class also argues that they are not barred by the statute of limitations because the defendants actively concealed the fraud by lying about the relationship between BFI and New World, citing *Davenport v. A.C. Davenport & Son Co.*, 903 F.2d 1139 (7th Cir.1990) (*overruled by Short* regarding the statute of limitations). The class argues that the defendants failed to inform the investors that the Balcor defendants and New World were involved in serious disputes, which eventually led to a settlement agreement in the summer of 1987.[12]

The defendants, however, point out that BFI's Second Quarter 1987 Interim Financial Statement disclosed the existence of the settlement agreement. In addition, the settlement agreement is distinct from the alleged "safe and conservative" portrayal of the BFI investment, to which the plaintiffs should have discovered the alleged fraud based on the reasons discussed above.

■ The *Majeski* class also argues that the defendants waived the statute of limitations argument by waiting more than a year after the *Short* decision to bring their motion. The defendants argue that their answers to the amended complaint, given a few months after the *Short* decision, stated the statute of limitations as an affirmative defense. This court finds no reason to conclude that the defendants waived this argument.

*Eckstein*

■ The absolute language of § 13 of the Securities Act of 1933 applies to the *Eckstein* class, i.e. "*[i]n no event* shall any

---

11. Or by August 1988, the last date by which all the plaintiffs received the BFI First Quarter 1987 Interim Financial Statement. *See* n. 7, *supra.*

12. A copy of the settlement agreement can be found attached as Ex. N to the Dec. 13, 1991 Kersten Aff.

such action be brought to enforce a liability created ... more than three years after the sale" (emphasis added). In *Short,* the court noted that this language "sets three years after the sale as the outer limit for litigation." *Short* at 1392. Because the last possible day of receipt of the BFI prospectus and sale of BFI investments was December 31, 1985, the last day to file the *Eckstein* complaint within the three-year prong of the statute of limitations was December 31, 1988. The *Eckstein* complaint was filed on February 10, 1989, and must therefore be dismissed as untimely.

The *Eckstein* class also argues that the defendants' fraudulent concealment, as distinct from equitable tolling, applies to the statute of limitations. This court finds, however, that the Seventh Circuit law as expressed in *Short* imposes an absolute three-year limitation on actions brought pursuant to § 10(b) and Rule 10b–5.

IT IS THEREFORE ORDERED that the defendants' November 5, 1991 motion for summary judgment is GRANTED and the above-captioned actions are DISMISSED.

# EXHIBIT TO OPINION

**1985**
JAN. 8 — PROSPECTUS
OCT. 11 — AMENDMENT TO PROSPECTUS (Resubscription Required)
DEC. 31 — OFFERING CLOSED
4 MOVIES RELEASED

**1986**
AUG. 13 — 2nd QUARTER 1986 REPORT
• "Partnership does not believe it will recover its total investment"*
NOV. 13 — 3rd QUARTER 1986 REPORT
• *
15 MOVIES RELEASED

**1987**
APRIL 6 — 1986 ANNUAL REPORT
• 19 of 23 movies released
• *
• net loss ≅ $15 million
MAY 14 — 1st QUARTER 1987 REPORT
• all 23 movies released
• *
• net loss ≅ $14 million
AUG. 18 — 2nd QUARTER 1987 REPORT
• all 23 movies released
• *
• net loss ≅ $17 million
• settlement agreement with New World
4 MOVIES RELEASED

**1988**
MAY 13/JULY — 1987 ANNUAL REPORT/CEO LETTER
• Investors will not recover all of original capital
OCT. 11 — MAJESKI COMPLAINT FILED IN WISCONSIN

**1989**
FEB. 10 — ECKSTEIN COMPLAINT FILED IN CALIFORNIA
FEB. 24 — MAJESKI AMENDED COMPLAINT FILED
AUG. 23 — MDL PANEL ORDERS ECKSTEIN TRANSFERRED TO E.D. WIS.

**1990**
JULY 30 — SHORT (7th Cir.)
• 10(b) = 1 yr./3 yr. statute of limitations
• declines to decide retroactivity
NOV. 14 — ECKSTEIN 2nd AMENDED COMPLAINT FILED

**1991**
JAN. 18 — CLASS CERTIFIED
MR. 13 — WENTZEL (E.D. Wis.)
• applies Short retroactively b/c no reliance
JUNE 19 — NEW LAW
• pending 10(b) cases: law re: statute of limitations as of this date applies
JUNE 20 — BEAM (S. Ct.)
• if apply law retroactively, apply to all
JUNE 21 — LAMPF (S. Ct.)
• 10(b) = 1 yr./3 yr. statute of limitations
• applies retroactively
DEC. 20 — President signs bill re. 10(b) statute of limitations

* This language will be represented by an asterisk for subsequent reports.